SSEN, INC.,

v.

## BOROUGH COUNCIL OF the BOROUGH OF EDDYSTONE.

**Appeal of Borough of Eddystone.**

Commonwealth Court of Pennsylvania.

Argued June 12, 2002.
Decided Nov. 8, 2002.

John J. Whellan, Milmont Park, for appellant.

John J. McCreesh, III, Upper Darby, for appellee.

BEFORE: COLINS, President Judge, and SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, COHN, Judge, and LEAVITT, Judge.

OPINION BY Judge COHN.

The Borough Council of the Borough of Eddystone (Council) appeals from an order entered on December 12, 2001 by the Court of Common Pleas of Delaware County, sustaining SSEN, Inc.'s (SSEN) appeal and approving SSEN's Application for Intermunicipal Transfer of a liquor license into the Borough of Eddystone (Borough).

SSEN is a Pennsylvania corporation that maintains a leasehold interest on property in the Eddystone Crossings Shopping Center in Eddystone, Pennsylvania, from which it has operated a pizza restaurant called "Bedrock Pizza" since April, 2001. SSEN had previously entered into an agreement of sale to purchase an eating place retail dispenser liquor license for an establishment formerly located in Upper Darby Township, Delaware County, in order to move it into the Borough. This particular license would allow SSEN to sell beer to customers eating on the premises and also to those desiring takeout. On April 27, 2001, SSEN filed a "Petition for Approval of an Intermunicipal Transfer of a Liquor License into the Borough of Eddystone" with the Borough. After providing proper notice, the Council held a public hearing on June 4, 2001 to discuss SSEN's petition. At the conclusion of the hearing, Council members voted unanimously to deny the petition and, on June 11, 2001, adopted a resolution to that effect, stating

that SSEN's proposed transfer was "adverse to the welfare, health, peace and morals of the Borough and its residents."

On June 26, 2001, SSEN appealed to the Court of Common Pleas of Delaware County, claiming that the Borough presented insufficient evidence at the hearing to support the Council's resolution.[1]

The trial judge met with both parties' counsel on July 30, 2001. He acknowledged receipt of the record from the Council, which the Borough's attorney had duly certified. The judge instructed the attorneys to submit their parties' arguments on briefs, which he would review "pursuant to [his] standard of review under liquor license appeal cases without taking additional testimony." The judge also indicated that he would make "his own independent finding of facts."

On December 12, 2001, "[u]pon a review of the record established before the Eddystone Borough Council," and after making its own findings of fact and conclusions of law, the trial court approved SSEN's application for an intermunicipal transfer of a liquor license. The court's order stated

> Upon consideration of Appellant's Appeal from the denial of its Application for Intermunicipal Liquor License Transfer, and following a review of the record before the Borough of Eddystone Council and the memoranda of law submitted on behalf of the parties, it is **ORDERED** that Appellant's Appeal shall be and the same hereby is sustained and the Application for Intermunicipal Liquor License Transfer is approved.

The Borough timely appealed the trial court's decision to this Court on January 10, 2002.

---

1. Item number 11 in SSEN's notice of appeal stated: "Delaware County local rule of Procedure 27(2) requires that this Court hear this matter de novo."

Because the issue here, which concerns the trial court's standard of review, is one of first impression requiring interpretation of recently amended portions of the Liquor Code,[2] we feel it prudent to provide some general background before we enter into our discussion of the case *sub judice.*

■ The Liquor Code has, for many years, maintained a strict municipal quota system permitting one license of any class for each three thousand inhabitants in any municipality.[3] Under this system, the Borough, with a population of 2,442 residents, would be limited to one liquor license.[4] However, early in 2001, the Pennsylvania General Assembly passed Act 141 of 2000[5] which, *inter alia,* amended four sections of the Liquor Code somewhat easing this restriction by providing the means to effectuate the intermunicipal[6] transfer of liquor licenses within a county.[7] Specifically, Section 4–461(b.3) of the Liquor Code describes the application process as follows:

An intermunicipal transfer of a license ... must first be approved by the governing body of the receiving municipality when the total number of existing restaurant liquor licenses and eating place retail dispenser licenses exceed one license per three thousand inhabitants. Upon request for approval of an intermunicipal transfer of a license ... by an applicant, at least one public hearing shall be held by the municipal governing body for the purpose of receiving comments and recommendations of interested individuals residing within the municipality concerning the applicant's intent to transfer a license into the municipality.... The municipality must approve the request unless it finds that doing so would adversely affect the welfare, health, peace and morals of the municipality or its residents. A decision by the governing body of the municipality to deny the request may be appealed to the court of common pleas in the county in which the municipality is locat-

2. Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. §§ 1–101—8–803.

3. A municipality "shall mean any city, borough, incorporated town, or township of this Commonwealth." Section 102 of the Liquor Code, 47 P.S. § 1–102.

4. The Borough currently has six (6) retail liquor licenses, and there is one (1) liquor license in safe keeping. (Resolution of the Borough Council of the Borough of Eddystone, adopted June 11, 2001.) The license in safe keeping has not been renewed; however, it could be purchased and the purchaser could "take a chance of getting it renewed." (Trans., 6/4/01 at 50–51).

5. Act 141 was approved by the Governor on December 20, 2000. Pursuant to Section 17(5) of the Act, sections pertinent to the case *sub judice* went into effect 60 days later, or on February 18, 2001.

6. "Intermunicipal" is not defined in the Liquor Code. However, pursuant to Section 1903(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1903(a), words are to be given their "common and approved usage." Thus, "inter," when used as a prefix, is defined as between or among. MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY, 607 (10th ed.2001).

7. *See* Purdon's Cumulative Annual Pocket Part 2002, Historical and Statutory Notes, for pertinent sections amended as follows:

Section 4–404: Issuance of hotel, restaurant and club liquor licenses-inserted 4th and 5th sentences;

Section 4–432: *Malt and brewed beverages* retail licenses—in subsection (d), inserted 4th and 5th sentences;

Section 4–461: Limiting number of retail licenses to be issued in each county—rewrote subsection (a), deleted subsection (b) and inserted subsections (b.1) through (b.3); and,

Section 4–464: Hearings upon refusal of licenses, renewals or transfers; appeals—inserted 12th sentence.

ed. A copy of the approval must be submitted with the license application. 47 P.S. § 4–461(b.3). Unfortunately, however, Section 461(b.3) does not specify the appropriate standard of review to be applied by the trial court from a decision of a governing body not to grant an intermunicipal transfer of a liquor license.

Thus, we arrive at the central issue presented in this case, *i.e.*, what is the trial court's standard of review. SSEN claims that Section 464 of the Liquor Code, 47 P.S. § 4–464, authorizes the trial court to hear the matter *de novo* and issue its own findings and conclusions. On the other hand, the Borough maintains that the trial court is to comply with Section 754(b) of Local Agency Law, 2 Pa.C.S. § 754(b), and review the matter *based only upon an established record*.

Section 464 of the Liquor Code, 47 P.S. § 4–464, governs hearings upon refusal of liquor licenses, renewals or transfers, and states in pertinent part:

The board may of its own motion, and shall upon the written request of any applicant ... fix a time and place for hearing of such application for license or for renewal or transfer thereof ... Such hearing shall be before a hearing examiner designated by the board. At such hearing, the board shall present its reasons for its refusal or withholding of license, renewal or transfer thereof.... The applicant may appear in person or by counsel, may cross-examine the witnesses for the board and may present evidence which shall likewise be subject to cross-examination by the board.... The board shall thereupon grant or refuse the license, renewal or transfer thereof.... Any applicant

who has appeared at any hearing, as above provided, who is aggrieved by the refusal of the board to issue any such license or to renew or transfer any such license ... may appeal ... to the court of common pleas of the county in which the premises or permit applied for is located. *If the application is for ... the intermunicipal transfer of a license, the governing body of the municipality receiving the new license or the transferred license may file an appeal of the board decision granting the license ... to the court of common pleas of the county in which the proposed premises is located.... The court shall hear the application de novo on questions of fact, administrative discretion and such other matters as are involved....*

47 P.S. § 4–464 (emphasis added). It is clear from a careful reading of Section 464 that it concerns only appeals *from decisions of the board, i.e.,* the Pennsylvania Liquor Control Board (PLCB).[8] In fact, all cases discussing the application of Section 464 of the Liquor Code involve appeals to the trial court from decisions of the PLCB *only. See, e.g., Pennsylvania Liquor Control Board v. Richard E. Craft American Legion Home Corp.,* 553 Pa. 99, 718 A.2d 276 (1998) (grant of new license); *Pennsylvania State Police, Bureau of Liquor Control Enforcement v. Cantina Gloria's Lounge, Inc.,* 536 Pa. 254, 639 A.2d 14 (1994) (Supreme Court extended rule to license suspension); *Two Sophia's, Inc. v. Pennsylvania Liquor Control Board,* 799 A.2d 917 (Pa.Cmwlth.2002) (license renewal); *Altshuler v. Pennsylvania Liquor Control Board,* 729 A.2d 1272 (Pa.Cmwlth. 1999) (license transfer). Therefore, the trial court's review of board decisions under Section 464 of the Liquor Code, as

8. *See* Section 102 of the Liquor Code, 47 P.S. § 1–102, defining "Board" as used in that act as the Pennsylvania Liquor Control Board.

enunciated in *Cantina Gloria's is de novo*, and it is *required* in the exercise of its statutory discretion to make findings and conclusions. Further, the trial court may sustain, alter, amend, or modify **the board's** action even if it does not find materially different facts. *Id.*

■ In the instant case, SSEN appealed to the trial court from a decision of the *Borough Council* of the Borough of Eddystone, *not from a decision of the PLCB*. Section 464, by its own terms, does not apply to local agency decisions, and was not amended to include appeals from local agency decisions within its purview. "It is well established that a borough is a local agency to which the Local Agency Law applies." *Delliponti v. DeAngelis*, 545 Pa. 434, 681 A.2d 1261 (1996). Section 754 of the Local Agency Law, 2 Pa.C.S. § 754, describes the disposition of appeals and the appropriate standard of review to be used by the courts as follows:

> (a) **INCOMPLETE RECORD.**—In the event a full and complete record of the proceedings before the local agency was not made, the court may hear the appeal de novo, or may remand the proceedings to the agency for the purpose of making a full and complete record or for further disposition in accordance with the order of the court.
>
> (b) **COMPLETE RECORD.**—In the event a *full and complete record* of the proceedings before the local agency was made, *the court shall hear the appeal without a jury on the record certified by the agency*. After hearing the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter B of Chapter 5 (relating to practice and procedure of local agencies) have been violated in the proceedings before the

agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence. If the adjudication is not affirmed, the court may enter any order authorized by 42 Pa.C.S. § 706 (relating to disposition of appeals).

(Emphasis added.)

■ A "full and complete record" is defined as "a complete and accurate record of the testimony taken so that the appellant is given a base upon which he may appeal and, also, that the appellate court is given a sufficient record upon which to rule on the questions presented." *City of Philadelphia v. Board of License and Inspection Review*, 139 Pa.Cmwlth. 240, 590 A.2d 79, 86 (1991) (quoting *Springfield School District v. Shellem*, 16 Pa.Cmwlth. 306, 328 A.2d 535, 538 (1974)), *petition for allowance of appeal denied*, 529 Pa. 625, 600 A.2d 540 (1991). Applying these criteria to the instant matter, we conclude that there clearly was a full and complete record upon which the trial court could have resolved the issues presented. In fact, the trial judge acknowledged that

> there was a record below [by] the administrative agency in this matter, namely Borough Council of the Borough of Eddystone. Within a week, Mr. Whalen, as the solicitor for the Borough of Eddystone, will certify to me the record consisting of the notes of testimony and exhibits admitted at that hearing.

(Trans., 7/30/01 at 4). Therefore, because we are dealing with an appeal from an adjudication of a local agency, which produced a full and complete record of the proceedings before it, and there is no other statutory directive in the Liquor Code, the proper standard of review in this appeal is set forth in Section 754(b) of Local

Agency Law.[9]

Pursuant to Section 754(b), a trial court may look only to the evidence relied on by the factfinder, in this case the Council, to see if it is sufficiently substantial to support the findings. *Kish v. Annville–Cleona School District,* 165 Pa. Cmwlth. 336, 645 A.2d 361, 363–364 (1994). "Nowhere in Section 754 is the reviewing court given general authority to make its own findings of fact and conclusions of law when the local agency has developed a full and complete record...." *SCRUB v. Zoning Board of Adjustment of the City of Philadelphia,* 804 A.2d 147 (Pa.Cmwlth. 2002). Further, a trial court, on appeal, may not substitute its judgment for that of a local agency. *Kish.* Because a complete record was made before the Council, it is that body and not the trial court which is the ultimate factfinder in these proceedings, and has the prerogative to determine the weight to be given to the evidence. *Andras v. Wyalusing Borough, Wyalusing Borough Council,* 796 A.2d 1047, 1049 (Pa. Cmwlth.2002). Its findings are conclusive and may not be disturbed on appeal. *Id.* Thus, we hold that the trial court erred in making its own findings of fact and conclusions of law in the case *sub judice.*

We note that pursuant to Section 754(b), the trial court may properly reverse where it determines that constitutional rights were violated, an error of law was committed, the procedure before the agency was contrary to statute, or the necessary findings of fact were not supported by substantial evidence. *Sparacino v. Zoning Board of Adjustment, City of Philadelphia,* 728 A.2d 445, 447 (Pa. Cmwlth.1999). In the case *sub judice,* the trial court found after performing a de novo review that

> the evidence failed to establish that the approval of a transfer of a liquor license into the Borough of Eddystone as requested by Appellant for use at the Bedrock Pizza Restaurant in the Eddystone Crossing Shopping Center would adversely affect the welfare, health, peace or morals of the municipality or its residents.[10]

*See* Conclusion of Law No. 2 in Trial Court Decision dated 12/12/01 at 3.

Substantial evidence is "more than a mere scintilla" of evidence and that which a reasonable mind might accept as adequate to support a conclusion. *Kish,* 645 A.2d at 364 (citing *Bey v. Board of Education, School District of Philadelphia,* 87 Pa.Cmwlth. 571, 488 A.2d 89 (1985)). Contrary to the standard of review used by the trial court, we reviewed the record that was before the Council

---

9. If the legislature had intended for *de novo* common pleas court review of local agency decisions in this area, it could have specified so, as it did in Section 464 for review of Board decisions. Since the legislature did not so specify, under the concept of *expressio unius est exclusio alterius,* arguably the legislature did not intend to change the standard of review.

10. The trial court made a finding of fact that the parties agreed that the trial judge could decide SSEN's appeal based on the Borough's record *and* additionally, could make its own findings of fact. *See* Finding of Fact no. 27 in Trial Court Decision dated 12/12/01 at 3. However, "[w]here public policy requires the observance of a statute, it cannot be waived by an individual or denied effect by courts, since the integrity of the rule expressed by the Legislature is necessary for the common welfare." *Juniata Valley Bank v. Martin Oil Company,* 736 A.2d 650, 664 (Pa.Super.1999) (quoting *Boyd v. Smith,* 372 Pa. 306, 310, 94 A.2d 44, 46 (1953)). Thus, the parties could not enter into an agreement to ignore the explicit language in a statute, nor could the trial court uphold the "non-observance" of Section 754(b) of the Local Agency Law. This rule also applies to Delaware County's local rule of procedure 27(2), which requires the trial court hear such a matter *de novo.*

pursuant to the requirements in Section 754(b) and this opinion. Notwithstanding our different standard of review, we also find that the Council's decision was *not* supported by substantial evidence.[11]

Our legislature has established the principle that a licensed establishment is not ordinarily detrimental to the welfare, health and morals of a neighborhood or its residents. *Appeal of Logan Square Neighborhood Association,* 102 Pa. Cmwlth. 224, 517 A.2d 581, 582 (1986), *petition for allowance of appeal denied,* 517 Pa. 612, 536 A.2d 1335 (1987). Here, the Borough offered the testimony of police chief Raymond Rodden, Jr. to support its argument that the additional license *would* have an adverse affect. His testimony consisted, in large part, of his opinions about the dangers of drinking and driving. He also commented on the demands an additional liquor license would place on the police department.[12] However, Chief Rodden's acknowledgement that his officers already patrol the shopping center and will continue to do so *regardless* of whether the transfer is granted (Trans., 6/4/01 at 47) refutes in large measure his argument concerning additional demands. Eight residents opposing the transfer also made remarks at the hearing, voicing their concerns about increased traffic, possible devaluation of existing li-

quor licenses and the saturation of drinking establishments already present in the Borough.

Little objective evidence was presented by the Borough; in fact, testimony intended to demonstrate increased traffic hazards, parking problems, drinking and driving under the influence which would result from the transfer was, at most, general and speculative. *See, e.g., K & K Enterprises, Inc. v. Pennsylvania Liquor Control Board,* 145 Pa.Cmwlth. 118, 602 A.2d 476, 480 (1992)(testimony of witnesses conveying general fears and not providing specific details is *not* considered substantial evidence of alleged detrimental effect of transfer of license). *Compare Manayunk Development Corporation v. Pennsylvania Liquor Control Board,* 715 A.2d 518 (Pa.Cmwlth.1998)(protestants presented before the trial court the testimony of a City councilperson representing the district, a civil engineer who performed a traffic and parking study, a custodian of records of the Department of Licenses and Inspections, an area resident, an architect and a city planner which this Court considered substantial evidence of detrimental effects to support denial of expansion of liquor license).

Because the Borough's evidence was not sufficient to allow the Council to conclude that the transfer would adversely affect

---

11. Our standard of review, where the trial court takes no additional evidence, is limited to determining whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact were supported by substantial evidence of record. *Tiller v. City of Philadelphia Board of Pensions and Retirement,* 806 A.2d 477 n. 4 (Pa.Cmwlth.2002)(citing Section 754(b) of the Local Agency Law, 2 Pa.C.S. § 754(b)). We could remand the case to the trial court for its determination based on the standard of review as outlined in this opinion; however, since we reach the same determination as did the trial court, albeit through a differing stan-

dard of review, in the interest of judicial economy, we will decide the issue here.

12. Chief Rodden testified that his department would be spread too thin having to handle the following: additional heavy vehicular and pedestrian traffic in the parking lot of the shopping center; patrol of a larger territory; a higher volume of calls; additional residents potentially operating vehicles under the influence of alcohol; additional underage drinkers; an increased number of arrests and prosecutions for alcohol-related crimes. *See* Transcript of Hearing on Petition before Eddystone Borough Council, June 4, 2001.

the Borough or its residents, pursuant to Section 754(b), the trial court properly reversed the Council's determination.

 Accordingly, based upon the foregoing discussion, the order of the trial court is affirmed.[13]

### ORDER

**NOW,** November 8, 2002, the order of the Court of Common Pleas of Delaware County in the above-captioned matter is hereby affirmed. The Chief Clerk is directed to send a copy of this opinion and order to the Chief Counsel of the Pennsylvania Liquor Control Board.

---

13. Only the PLCB can *approve* the actual *transfer* of a liquor license. As such, SSEN's petition, requesting approval from the Borough for an intermunicipal transfer, was incorrectly titled and requested relief the Borough could not provide. In essence, the recent amendments to the Liquor Code simply provide the receiving municipality a threshold level of approval. In other words, if a municipality approves a *request* for transfer, the actual *approval* and its accompanying paperwork are solely within the province of the PLCB.

In the instant case, because of the somewhat complicated nature of the Liquor Code amendments, the Borough ultimately decided the wrong issue, and the trial court's order provided relief it was not authorized by statute to give. Neither party raised an issue to this effect during the proceedings; however, we emphasize that a governing body has no authority to effectuate an actual transfer of a liquor license. Nonetheless, we believe that such errors were harmless, because both the Borough and the trial court proceeded through their respective adjudications evaluating the same type of evidence that they should have been addressing. Therefore, we feel it unnecessary to enter an order to vacate and remand.