## BOSTON CONCESSIONS GROUP, INC.

v.

## LOGAN TOWNSHIP BOARD OF SUPERVISORS, Appellant.

Commonwealth Court of Pennsylvania.

Argued Oct. 7, 2002.

Decided Dec. 10, 2002.

Reargument Denied Feb. 7, 2003.

---

sions at different venues in approximately thirty states. Those venues include, *inter alia*, movie theaters, college and professional sporting events, ski and summer resorts, various tourist attractions and other special events. BCG is the sole food and beverage concessionaire at Lakemont Park (Lakemont), a family amusement park located in Logan Township (Township), Blair County.

BCG is in the process of attempting to obtain a liquor license in order to sell alcoholic beverages at catered events at Lakemont. On June 22, 2001, BCG filed an application under Section 461(b.3) of the Code, seeking to transfer a liquor license from the City of Altoona to the Township. Section 461(b.3) provides:

John W. Heslop, Jr., Altoona, for appellant.

Robert S. Donaldson, Altoona, for appellee.

BEFORE: COLINS, President Judge, SIMPSON, J., and JIULIANTE, Senior Judge.

OPINION BY Senior Judge JIULIANTE.

The Logan Township Board of Supervisors (Board) appeals from the January 7, 2002 order of the Court of Common Pleas of Blair County (trial court) that reversed the Board's order denying an application on behalf of Boston Concessions Group, Inc. (BCG) seeking an intermunicipal transfer of a liquor license pursuant to Section 461(b.3) of the Liquor Code (Code).[1] We affirm.

BCG is a Massachusetts-based company that operates food and beverage conces-

An intermunicipal transfer of a license ... must first be approved by the governing body of the receiving municipality when the total number of existing restaurant liquor licenses and eating place retail dispenser licenses exceed one license per three thousand inhabitants. Upon request for approval of an intermunicipal transfer of a license ... by an applicant, at least one public hearing shall be held by the municipal governing body for the purpose of receiving comments and recommendations of interested individuals residing within the municipality concerning the applicant's intent to transfer a license into the municipality.... *The municipality must approve the request unless it finds that doing so would adversely affect the welfare, health, peace and morals of the municipality or its residents.* A decision by the governing body of the municipality to deny the request may be appealed to the court of common pleas in the county in which the municipality is

---

1. Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. § 4–461(b.3).

located. A copy of the approval must be submitted with the license application.

47 P.S. § 4-461(b.3) (emphasis added).

On July 26, 2001, a public hearing was held on BCG's application. BCG presented evidence in support of it application for transfer. Several members of the public, as well as a representative of a Township liquor license holder wishing to sell its license, voiced opposition to BCG's application.

BCG presented evidence that if its liquor license application was eventually approved by the Pennsylvania Liquor Control Board (PLCB), it would curtail Lakemont's current practice of permitting the unsupervised consumption of alcoholic beverages by patrons who bring their own alcoholic beverages into the park. Rather, BCG would implement a system where alcohol sales would be limited to certain fenced-in open-air pavilions and where individuals who wished to purchase alcohol would have to wear wristbands.

Three witnesses testified in opposition to BCG's application.[2] In addition, the Blair County chapter of Mothers Against Drunk Driving (MADD), as well as the parents of a teenager killed in a drunk driving accident, expressed opposition to the sale of alcohol in a family-oriented amusement park. The Township's police chief also expressed concerns about BCG's promise to maintain security. The police chief also introduced into evidence a survey of the policies of several other Pennsylvania amusement parks.[3]

Following the hearing, the Board issued Resolution No. 07-26-01 disapproving BCG's application based on the Board's finding that the transfer of the liquor license would adversely affect the welfare, health, peace and morals of the residents of the Township and the public in general. The Board subsequently issued written findings of fact and conclusions of law in support of its resolution.

BCG appealed to the trial court on the ground that the Board's decision was not supported by substantial evidence. The trial court noted that the patrons of Lakemont are currently permitted to bring their own alcoholic beverages with them for consumption on park premises. The trial court further noted that with two exceptions, the objections to BCG's application were generic in nature and could have been raised in opposition to the transfer of any liquor license within any jurisdiction. Citing *In re Medred*, 210 Pa.Super. 249, 232 A.2d 203 (1967), the trial court reasoned that inasmuch as the Board's disapproval was essentially based on the wishes of the objectors rather than any evidence indicating that the license would be detrimental to the welfare, health, peace and morals of the Township residents, the Board's resolution was not supported by substantial evidence.

The trial court did address the two objections specifically related to license

---

**2.** Romeo DeBartolome testified that Lakemont is supposed to be a family park and that it would be a bad idea to put thousands of kids in proximity to alcohol. David Hoover testified that he is a frequent visitor to the park with his daughter and that he felt that the grant of a liquor license would ruin a nice family amusement park. Joe Koeck also testified that he was opposed and stated that he thought there had been a recent a problem at the park's ballfield.

**3.** The survey indicated that DelGrosso's Amusement Park in Tipton, Blair County, does not sell alcohol, but permits patrons to bring their own to pavilion areas. However, alcohol consumption was monitored by security. Kennywood and Idlewild amusement parks prohibit alcohol entirely. Hersheypark sells alcohol in two locations monitored by security.

transfer at issue, *i.e.*, (1) that the introduction of alcoholic beverages to Lakemont, a family amusement park, would be detrimental to the children in attendance; and (2), that the addition of another liquor license in the Township would have an adverse economic effect on the existing liquor licensees in the Township. With regard to the first objection, the trial court noted that Lakemont patrons are already permitted to bring their own alcoholic beverages with them. With regard to the second objection, the trial court noted that the issue of whether the license transfer would have an adverse economic affect on the current Township liquor licensees is not a consideration under Section 461(b.3) of the Code.

Having determined that the Board's findings of fact were not supported by substantial evidence and that the license transfer would not adversely affect the welfare, health, peace and morals of the Township residents, the trial court reversed the Board's disapproval of the license transfer.

■ The Township appealed. Recently, in *SSEN, Inc. v. Borough Council of the Borough of Eddystone*, 810 A.2d 200, (Pa. Cmwlth.2002), this Court, in an *en banc* decision, determined that inasmuch as municipalities are local agencies to which the Local Agency Law (LAL), 2 Pa.C.S. §§ 551–555, 751–754, applies, appellate review of decisions made by municipalities approving or disapproving applications for the transfer of intermunicipal liquor licenses pursuant to Section 461(b.3) of the Code is governed by Section 754 of the LAL, 2 Pa.C.S. § 754. Pursuant to Section 102 of the Code, a *municipality* "shall mean any city, borough, incorporated town, or township of this Commonwealth." 47 P.S. § 1–102.

Therefore, under Section 754(b) of the LAL, 2 Pa.C.S. § 754(b), where a full and complete record of the proceedings has been made before the local agency, the trial court may reverse the agency's decision if the agency's findings of fact were not supported by substantial evidence, an error of law was committed, constitutional rights were violated, or the procedure before the agency was contrary to statute. *SSEN*, 810 A.2d at 207. Such is the case here.

Nevertheless, the Township contends that the trial court erred in determining that there was not substantial evidence in the record to support the Board's finding that the liquor license transfer would adversely affect the welfare, health, peace and morals of the Township and its residents. Specifically, the Township contends that the objectors' testimony regarding the possibility of the occurrence of alcohol-related problems in a family-oriented amusement park, including possible underage drinking by minors visiting the park, constituted substantial evidence in support of the Board's resolution.

In support of its position, the Township cites *Commonwealth v. Koehler's Bar, Inc.*, 204 Pa.Super. 25, 201 A.2d 306 (1964), where the Superior Court upheld the common pleas court's determination that for purposes of a license transfer under Section 404 of the Code, 47 P.S. § 4–404, the evidence presented provided a sufficient basis for a finding that the license would be detrimental to the welfare, health, peace and morals of the neighborhood. In *Koehler's Bar*, the witnesses testified that they thought an establishment which sold alcoholic beverages in their neighborhood would be detrimental insomuch as the patrons of that establishment might act in a disorderly manner not only in front of small children which may be present, but also the members of several nearby churches.

In the case at bar, the Board made the following findings in its decision in support of its resolution disapproving BCG's application:

8. If the transfer of the liquor license was approved, [BCG] intended, but was not required, to limit the area where liquor in the Park could be consumed to certain open air pavilions, located within the family amusement Park, which would be fenced in and adult individuals desiring to consume alcohol therein would wear wrist bands for identification. Tr. pp. 7, 17 & 30.

. . . .

13. The record reflects that the "good word" of those requesting and supporting the transfer is the guarantee that [was] offered by [BCG] that it would sell only beer and wine within the fenced in area and that [BCG] would not expand sales and service to other parts of the family amusement Park. Tr. pp. 23, 24, 27 & 28.

14. Park management currently permits unsupervised alcohol consumption in the family amusement Park by allowing patrons to bring their own alcohol for private functions. Tr. pp. 11 & 31.

. . . .

17. The evidence shows that residents of the Township are concerned that intoxicated individuals would create problems in the family amusement Park; and underage drinking would be encouraged due to the great numbers of minors who patronize the amusement Park. Tr. pp. 34, 43, 44 & 51.

. . . .

19. A survey of other amusement parks, by the Chief of Police of Logan Township indicated that DelGrosso's Amusement Park, in Tipton, Blair County, does not sell alcohol, but patrons are permitted to bring their own to the pavilion areas. However, uniformed security is provided twenty four (24) hours a day and alcohol use is monitored very strictly. . . . Tr. pp 48 & 49, *See also* Chief of Police Memorandum.

20. The record establishes that the Chief of Police of the Township believes that [BCG's] plans for [the] serving of alcohol could become a concern, if the promises made by [BCG] regarding security were not continued, especially if rock concerts were conducted in the amusement Park. Tr. pp. 47 & 49.

21. The record also establishes that alcohol abuse, including underage drinking and the problems associated with it is a serious concern for residents of the Township and the Supervisors of Logan Township. Tr. pp. 34, 43, 55, 56 & 57.

22. The Board of Supervisors denied an earlier request for transfer of liquor license to permit a six pack shop and family fun center in Logan Township as the Supervisors believe that it is adverse to the welfare, health, peace and morals of the Township to permit the use and sale of alcohol in family entertainment areas frequented by minors. Tr. p. 34.

Board's Decision at 2–3; R.R. 15a–16a.

As indicated by the Board's findings, Lakemont patrons are currently permitted to bring their own alcohol into the park and alcohol consumption is unsupervised, regardless of the fact that those areas are frequented by minors. Ronald DeBartolome, a Lakemont patron, testified that "[i]t has always been a policy at Lakemont Park that you could have these parties and bring your own liquor, beer, whatever." N.T. 32; R.R. 71a. Furthermore, James Bronson, BCG's general manager at Lakemont, testified that, at the present, alcohol consumption in the park is unsupervised. *Id.* at 11; R.R. 50a.

However, as the Board further found, if BCG's application for license transfer was

approved, alcohol consumption would be supervised by BCG and limited to a fenced-in area. Bronson testified that patrons would be asked for proof of age and then a wristband would be placed on the patron's left wrist. *Id.* at 30; R.R. 69a. The wrist band is "pretty much impossible" to reuse. *Id.* As a result, it appears that in actuality, the license transfer would result in greater control over alcohol consumption in the park and, thus, alleviate concerns about underage drinking on the premises.

In light of the circumstances in the present case, especially the fact that the unsupervised consumption of alcoholic beverages is currently permitted in the park, we find *Koehler's Bar* to be factually distinguishable. As such, we find the Township's reliance upon that case to be misplaced.

■ Moreover, we do not believe that the Township's concerns about the license transfer are sufficient to support the Board's determination that the license transfer would be detrimental to the Township.[4] In *SSEN*, we recognized that "[o]ur legislature has established the principle that a licensed establishment is not ordinarily detrimental to the welfare, health and morals of a neighborhood or its residents." 810 A.2d at 208. In reviewing the evidence in *SSEN*, this Court stated:

Here, the Borough offered the testimony of police chief Raymond Rodden, Jr. to support its argument that the additional license *would* have an adverse affect. His testimony consisted, in large part, of his opinions about the dangers of drinking and driving. He also commented on the demands an additional liquor license

would place on the police department.... Eight residents opposing the transfer also made remarks at the hearing, voicing their concerns about increased traffic, possible devaluation of existing liquor licenses and the saturation of drinking establishments already present in the Borough.

Little objective evidence was presented by the Borough; in fact, testimony intended to demonstrate increased traffic hazards, parking problems, drinking and driving under the influence which would result from the transfer was at most, general and speculative. *See e.g., K & K Enterprises, Inc. v. Pennsylvania Liquor Control Board,* 145 Pa. Cmwlth. 118, 602 A.2d 476, 480 (1992) (testimony of witnesses conveying general fears and not providing specific details is *not* considered substantial evidence of alleged detrimental effect of transfer of license).

810 A.2d at 208 (emphasis in original, footnote omitted).

In view of the foregoing, we conclude that·in the present case, the evidence relied on by the Board as to possible alcohol-related problems including underage drinking and driving under the influence, is too general and speculative to constitute substantial evidence in support of the Board's determination that the license transfer would be detrimental to the Township. *SSEN.*

■ As discussed above, licensed establishments are not "ordinarily detrimental to the welfare, health and morals of a neighborhood or its residents." *Id.,* 810 A.2d at 208. Here, the record is absent of

4. We also reject as unsupported by the evidence the Board's concern that at some point in the future BCG may expand its service without Township approval to include a bar, nightclub or other establishment. Bronson testified that BCG had no intention to expand liquor sales at Lakemont in the future and that it wanted the park to stay a family park by controlling what is happening now. *See* N.T. 17–18; R.R. 56a–57a.

any specific evidence indicating that the license transfer would in fact be *detrimental* to Lakemont or its patrons.

Accordingly, we affirm the trial court's order.

### ORDER

AND NOW, this 10th day of December, 2002, the January 7, 2002 order of the Court of Common Pleas of Blair County is hereby AFFIRMED.

DISSENTING OPINION BY President Judge COLINS.

Because the municipality's denial of the request for intermunicipal transfer of a liquor license to a concession at a family amusement park is supported by substantial evidence, I dissent.

In *SSEN, Inc. v. Borough Council of the Borough of Eddystone*, 810 A.2d 200 (Pa. Cmwlth.2002), we concluded that appellate review of a municipality's denial of a request for intermunicipal transfer of a liquor license is governed by the Local Agency Law, 2 Pa.C.S. §§ 551–555, 751–754. Where as here, a full and complete record is made before the local agency, the court of common pleas must affirm absent an error of law, constitutional violation, or lack of substantial evidence to support the adjudication. 2 Pa.C.S. § 754.

In order to deny a request for intermunicipal transfer of a liquor license a municipality must find that approval of the request would adversely affect the welfare, health, peace, and morals of the municipality or its residents. Section 461(b.3) of the Liquor Code,[1] 47 P.S. § 4–461(b.3). Although as a general rule a licensed establishment is not ordinarily detrimental to the welfare, health, and morals of the inhabitants of a neighborhood, the transfer of a license will be detrimental where the nature of the establishment will adversely affect the nature and character of the neighborhood. *Appeal of Logan Square Neighborhood Association*, 102 Pa. Cmwlth. 224, 517 A.2d 581 (1986), *petition for allowance of appeal denied*, 517 Pa. 612, 536 A.2d 1335 (1987).

Notwithstanding the park management's permissive treatment of unsupervised alcohol consumption by adults who bring their own alcoholic beverages to the park, the evidence presented before the Logan Township Board of Supervisors constitutes substantial evidence to support its denial of the request. The "neighborhood" in question in this case is a family amusement park attended by great numbers of minors where currently alcoholic beverages are not for sale or available, and an establishment selling and serving alcoholic beverages to adults will undoubtedly affect the nature and character of the park. When the location of the proposed license is a family amusement park, there can be no presumption that a licensed establishment will not be detrimental to the "neighborhood."

The Board found that despite BCG's assurances that it would confine the consumption of alcohol to open air pavilions, serve only beer and wine, supervise the consumption of alcohol, and serve alcoholic beverages only during from May to September, BCG was under no contractual or legal obligation to honor those assurances. Park management does not supervise the consumption of alcoholic beverages and lacks the funding to do so. Furthermore, the police chief testified that a survey of other family amusement parks revealed that most do not permit alcohol at all and those that do provide 24–hour security, sell the alcoholic beverages at high prices to discourage use, and strictly limit alcohol

---

1. Act of April 12, 1951, P.L. 90, *as amended.*

use to specified areas. Under the substantial evidence standard, the Board's refusal should be upheld.

For these reasons, I would reverse the trial court's order.