# Concerned Citizens of Exeter Township. v.
# Board of Supervisors of Exeter Township

*Josele Cleary,* for appellants.
*Andrew J. Bellwoar,* for appellee.
*Jon S. Malsnee,* for intervenor.

LASH, *J.,* December 11, 2006—The matter before this court is the land use appeal filed by Concerned Citizens of Exeter Township Inc., Jack Bertolet, James Focht and Linda Focht, and J. Kim Kolakowski from the written decision of the Board of Supervisors of Exeter Township, dated July 6, 2006, granting the application of Exeter Township School District for conditional use approval. The school district's application requested conditional use approval for a public school within an Agricultural Preservation District. For reasons set forth herein, this court reverses the decision of the board and denies conditional use approval to the school district.

On or about December 20, 2005, the school district entered into an agreement of sale with Jordan L. and Elizabeth M. Bausher to purchase a portion of real property owned by Baushers and located on the eastern side of Ritter Lane, between Boyertown Pike and Oley Pike, in Exeter Township. The Baushers contemplate a subdivision of their property, with the school district to receive

approximately 110 acres, leaving a residue to the Baushers of approximately 40 acres, including a residence and other buildings. The property is located in the Agricultural Preservation District of Exeter Township.

On February 28, 2006, the school district filed an application for a conditional use to construct a school facility on the premises.[1] A hearing was held on April 27, 2006 and May 25, 2006. At the hearing, the school district submitted a plan which provided a rendering of the proposed school facility. Three buildings were identified, together with multiple driveways, an internal street system, parking compounds, and several play areas and sporting fields.

At a public meeting on July 6, 2006, the board, by a 3 to 2 vote, granted the school district's application for a conditional use. A written decision was then issued, also dated July 6, 2006, and mailed to the school district on July 10, 2006. The two dissenting board members also issued findings of fact, conclusions of law and a "minority decision."

The board concluded that the school district did satisfy all conditions required by the Exeter Township Zoning Ordinance for conditional use approval, including but not limited to, "the specifics set forth in section 808 of the Exeter Township Zoning Ordinance."[2] This conclusion was buttressed by several findings of the

---

1. On February 28, 2006, public schools were permitted as a conditional use under section 401.4.D. of the Exeter Township Zoning Ordinance. Subsequently, the board amended the zoning ordinance, removing the provision listing schools as a conditional use within the Agricultural Preservation District. The timing of the application has not been raised as an issue in this case.

2. Conclusion of law no. 5.

board, all of which addressed the sufficiency of the school district's evidence regarding compliance with five standards listed in section 808(3)(A-E). However, with two exceptions relating to procedures,[3] the board made no specific findings regarding satisfaction of any conditions required by the zoning ordinance other than those set forth in the five standards of section 808(3)(A-E).

The board also imposed additional conditions and safeguards upon the school district necessary for the granting of the conditional use:

"(A) No street can extend from the proposed school into Glen Oley Farms.

"(B) Any additional use of the subject premises must be agricultural in nature with crops being planted on the unused portions of said property not used by and for the school and/or its associated uses.

"(C) As many of the existing whole growth trees shall be retained, and a vegetation buffer shall be erected with coniferous trees 10 to 15 feet in height between an erected sound deterrent barrier and the adjoining residential areas with said planting to occur in the early portions of said development.

"(D) The external lighting on the school premises shall be erected and built so as to not shine upon adjoining residential properties in Glen Oley Farms and any other adjacent subdivisions.

"(E) There shall be no further subdivision of the premises unless this provision is declared illegal as provided by law.

---

3. In conclusion 8, the board found that the school district's application was timely filed. In conclusion 9, the board found that all notice requirements were met.

"(F) The school facilities shall not be leased to any third parties or entities for non-school functions, without prior written permission and approval of the Board of Supervisors of Exeter Township.

"(G) A traffic study shall be prepared and followed so as to minimize hazardous and congested traffic conditions as provided in all sections of the Exeter Township Zoning Ordinance.

"(H) Applicant shall comply with any and all historical area controls as more particularly set forth in section 625 of the Exeter Township Zoning Ordinance.

"(I) Applicant shall comply with any and all other ordinances and regulations of Exeter Township including, but not limited to those regarding development of the tract specifically testified to by applicant's witnesses at the various public hearings including but not limited to the land development ordinances and requirements more particularly set forth therein.

"(J) One primary school, K-4 is presently allowed.

"(K) Spectator events will be scheduled so as to minimize impact of traffic on adjoining residential areas.

"(L) School spectator events shall be limited to daylight hours.

"(M) Bausher lot that remains must be a conforming lot.

"(N) There shall be no more than three recreational/athletic fields, none of which shall be lighted.

"(O) The two private cemeteries currently on the site will be preserved and appropriately maintained.

"(P) The school district shall not apply for any variances or waivers.

"(Q) No modular classrooms will be permitted."

Citizens filed their appeal on August 1, 2006. On August 21, 2006, the school district intervened. Argument was held before this court on November 6, 2006.

In the case of *In re Thompson,* 896 A.2d 659, 667-68 (Pa. Commw. 2006), the Pennsylvania Commonwealth Court provides a comprehensive statement on this court's scope of review:

"The proper scope of review in this appeal is set forth in section 754(b) of Local Agency Law, 2 Pa.C.S. §754(b); *SSEN Inc. v. Borough Council of Borough of Eddystone,* 810 A.2d 200, 206 (Pa. Commw. 2002). Section 754(b) provides:

"(b) Complete record.—In the event a full and complete record of the proceedings before the local agency was made, the court shall hear the appeal without a jury on the record certified by the agency. After hearing, the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of subchapter B of chapter 5 (relating to practice and procedure of local agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence. If the adjudication is not affirmed, the court may enter any order authorized by 42 Pa.C.S. §706 (relating to disposition of appeals) . . . .

"Pursuant to section 754(b), a reviewing court may properly reverse where it determines that constitutional rights were violated, an error of law was committed, the procedure before the agency was contrary to statute, or

the necessary findings of fact were not supported by substantial evidence. *SSEN; Sparacino v. Zoning Board of Adjustment, City of Philadelphia,* 728 A.2d 445 (Pa. Commw. 1999), *petition for allowance of appeal denied,* 565 Pa. 680, 775 A.2d 811 (2001). A reviewing court may look only to the evidence relied upon by the fact-finder, . . . to see if it is sufficiently substantial to support the findings. Section 754(b) of the Local Agency Law; *SSEN; Kish v. Annville-Cleona School District,* 165 Pa. Commw. 336, 645 A.2d 361, 363-64 (1994). 'Nowhere in section 754 is the reviewing court given general authority to make its own findings of fact and conclusions of law when the local agency has developed a full and complete record . . . .' *Society Created to Reduce Urban Blight (SCRUB) v. Zoning Board of Adjustment of the City of Philadelphia,* 804 A.2d 147, 150 (Pa. Commw. 2002).

"A reviewing court must accept the credibility determinations made by the municipal body which hears the testimony, evaluates the credibility of the witnesses and serves as fact-finder. *Young v. Pistorio,* 715 A.2d 1230 (Pa. Commw. 1998); *Collier Stone Company v. Zoning Hearing Board for the Township of Collier,* 710 A.2d 123 (Pa. Commw. 1998). The reviewing court is not to substitute its judgment on the merits for that of the municipal body. *East Torresdale Civic Association v. Zoning Board of Adjustment of Philadelphia County,* 536 Pa. 322, 639 A.2d 446 (1994); *Kish; Snyder v. Railroad Borough,* 59 Pa. Commw. 385, 430 A.2d 339 (1981). Assuming the record demonstrates the existence of substantial evidence, the court is bound by the municipal body's findings, which are the result of resolutions of credibility and conflicting testimony. *Snyder.*"

The provisions governing conditional use procedures for Exeter Township are set forth in section 808 of the zoning ordinance. Section 808 provides:

"808. Conditional use procedures.

"(1) Application. Four copies of an application for permission to conduct a use permitted by condition shall be submitted to the township secretary. Such application shall include all information specified for a zoning permit application in 801 of this chapter and any other information necessary to allow the township supervisors to determine that all requirements of this chapter have been met.

"(2) Review. After receiving an application, the supervisors shall refer one copy of the application to the township planning commission for its review and one copy to the township zoning officer for his review. The application shall be reviewed at one or more advertised meetings of the township supervisors, and the supervisors shall either approve or disapprove the application within 90 days after the date the application is received by the township secretary, except for those uses also regulated by other township ordinances, such as sanitary landfills, which may require more than 90 days to review, the supervisors may take up to 120 days to act on the application.

"The granting of permission to conduct a use permitted by condition does not exempt an application from acquiring all approvals required by the township's Subdivision and Land Development Ordinance.

"(3) Standards. Conditional uses shall meet the specific standards established for each use by this chapter and all other applicable zoning district requirements and

general regulations established by this chapter. In addition, the following standards shall be met:

"(A) The use shall be one which is specifically authorized as a conditional use in the zoning district wherein the applicant is seeking a conditional use.

"(B) Services and utilities shall be made available to adequately service the proposed use.

"(C) The use will not generate traffic such that hazardous or unduly congested conditions will result.

"(D) The use is appropriate to the site in question.

"(E) The use shall not adversely affect the character of the general neighborhood, nor the health and safety of residents or workers on adjacent properties and in the general neighborhood.

"The applicant shall demonstrate, as a condition to approval of his application, that the standards in 808(3) and those specified elsewhere in this chapter for the use in question will be met.

"The township supervisors may impose such additional safeguards as are necessary to protect the public health, safety and welfare."

Citizens contend that section 808 requires that conditional use applications meet all applicable zoning district requirements provided in the zoning ordinance. They raise the following four issues:

"(A) Whether the school district failed to present a plan meeting the specific and objective requirements of section 803 [sic][4] of the zoning ordinance which requires that an application contain a plan meeting requirements of zoning ordinance section 801.

---

4. This is a typographical error which should read 808.

"(B) Whether the school district failed to demonstrate that it complied with the specific and objective requirement of the zoning ordinance concerning the maximum impervious surface coverage in the Agricultural Preservation District.

"(C) Whether the school district failed to demonstrate compliance with the specific and objective requirements of the zoning ordinance regulating off-street parking and driveways.

"(D) Whether the school district failed to demonstrate compliance with the specific and objective requirements of the zoning ordinance by presenting a plan which proposed creation of a lot without street frontage."

Citizens' first concern is that the school district's application is deficient on its face and that this deficiency is fatal to its request for a conditional use. Under section 808.1, the application is to include, among other things, "all information specified for a zoning permit application in 801 of this chapter." Section 801.2 delineates specific information required to be contained within the application.[5] Citizens argue that the required information does

---

5. 801.2 provides:

"(2) Application procedures. The application for a zoning and/or building permit shall be submitted to the zoning officer in writing on a form prescribed by the zoning officer. The application shall be submitted by the owner or lessee of any building, structure or land or the agent of either, provided, however, that if the application is made by a person other than the owner or lessee, it shall be accompanied by a written authorization from the owner or lessee authorizing the work and designating the agent. The application shall be accompanied by at least the following information:

"(A) A map of the lot in question, drawn to scale, indicating the lot size and showing all dimensions of lot lines and the exact location(s) on the lot of all existing and proposed buildings, fences, signs, structures and alterations to buildings or structures.

not appear on the application, nor was it produced as evidence at the hearing.

Citizens also claim that the school district's plan should have specifically set out which portions of the land will constitute "open area by delineating the location and size of the principal and accessory buildings, as well as the location of paving and other impervious surfaces." While the plan does designate building footprints, internal roadways and parking areas, there will be other areas of impervious surface coverage which must be separately designated from the open area. The plan is presently insufficient to determine whether the plan complies with section 401.5 of the zoning ordinance, which requires a minimum open area of 80 percent and maximum lot coverage of 10 percent.

---

"(B) The use, height, length, width and proportion of the total lot area covered of all proposed and existing buildings, structures and additions or alterations to buildings or structures.

"(C) A statement indicating the number of dwelling units and/or commercial or industrial establishments to be accommodated within existing and proposed buildings on the lot. In the case of commercial and industrial uses and home occupations, the floor area to be devoted to each use shall be indicated.

"(D) The location, dimensions and design of parking and loading areas including the size and arrangement of all spaces and means of ingress, egress and interior circulation, recreation areas, screens, buffer yards and landscaping, means of egress from and ingress to the lot, routes for pedestrian and vehicular traffic and outdoor lighting.

"(E) The location of all utility lines, the method of proposed water supply and sewage disposal and the location of any on-lot facilities.

"(F) All streets, right-of-ways and easements on or adjacent to the lot.

"(G) Proof of worker's compensation coverage, if the application is submitted by a contractor.

"(H) All other information necessary for the zoning officer to determine conformance with and provide for enforcement of this chapter."

Citizens' third concern is that the school district failed to comply with section 612, relating to off-street parking. None of the parking lots delineated any parking spaces reserved for disabled drivers. Additionally, the plan fails to comply with section 613.7 of the zoning ordinance requiring that the proposed driveways meet the clear site distance requirements established by the Pennsylvania Department of Transportation.

Finally, citizens contend that the remainder property reserved to the Baushers has no street frontage. Under section 600 of the zoning ordinance, no lot shall be created which does not abut a public street or approved private street.

The school district counters by arguing that it has presented sufficient evidence to meet the standards required by the zoning ordinance at this stage of the proceeding. In seeking approval of a conditional use, the school district urges that it is only required to meet the standards of section 808.3(A-E) of the zoning ordinance, and is not required to provide detailed and specific information establishing compliance with all applicable provisions of the zoning ordinance. While ultimately the specifics will have to be presented through the subdivision and land development process, requiring strict compliance with the entire zoning ordinance at this stage would be premature, impractical, and unnecessary.

An applicant for conditional use has the burden to demonstrate compliance with the specific criteria of the zoning ordinance. To meet this burden, the applicant is generally not imposed upon to demonstrate compliance with all provisions of the zoning ordinance which ultimately would become pertinent at the final stages of subdivision. Rath-

er, the applicant must show compliance with those provisions of the zoning ordinance "that relate specifically to the conditional use." The courts have recognized that obtaining approval for a conditional use represents only one stage of the subdivision approval process. At this stage, the governing body's function is to review the proposed use and determine its appropriateness. This review need not involve design details, which can be delineated at a later time. *In re Thompson, supra* at 670-71.

We also note, however, that the extent of the burden of production at the conditional use approval stage is governed by the terms of the zoning ordinance itself. This determination is made on a case-by-case basis and will vary among municipalities, "based upon the use requested and the language in the ordinance." *In re Thompson, supra* at 670. Therefore, when the ordinance so states, approval of a conditional use may be conditioned upon a showing of compliance with all applicable zoning requirements.

In this case, the terms of the zoning ordinance are clear. Contrary to the school district's contentions, the zoning ordinance requires more than a mere showing that the five standards set forth in section 808.3(A-E) are met. Section 808.3 provides that the five standards are "additional" to other specific standards established for the conditional use by the terms of "this chapter[6] and all other applicable zoning district requirements and general regulations established by this chapter." Thus, the

---

6. The term "chapter" is not specifically defined in the zoning ordinance. However, section 100 sets forth that the word "chapter" is synonymous with the Exeter Township Zoning Ordinance of 2000. We, therefore, read the word "chapter" to encompass the entire zoning ordinance.

board was required to also determine whether the plan, as submitted, complied with all applicable zoning ordinance requirements.

As stated, citizens complain of several zoning deficiencies, namely, the failure to properly reserve open area, the failure to delineate disabled driver parking spaces, the failure to provide satisfactory driveway site lines, and the failure to provide street frontage for the property reserved to the Baushers.

We find no problem with the school district's presentation of the proposed open area/impervious surface designations. Under section 401.5 of the zoning ordinance, the plan is sufficient if maximum lot coverage does not exceed 10 percent, maximum paved area does not exceed 10 percent, and the minimum open area is at least 80 percent. The plan submitted by the school district provides that the development shall meet these parameters. The fact that there is a lack of specificity on where buildings, paving or sidewalks will be located does not warrant a rejection on this basis because section 401.5 does not require specific delineations on measurement or location. Citizens' claim, that the plan omits some of the paving requirements for the project, such as sidewalks, and that, therefore, the proposed percentages are not credible, is speculative. The plan's terms comply with section 401.5, and that is all that is necessary for this stage of the project.

We find, however, that citizens' other challenges have merit. Section 600 of the zoning ordinance requires that all lots that are created must abut a public street or a private street approved by the township supervisors. It is undisputed that the planned subdivision does not pro-

vide street frontage for the property reserved for the Baushers. The board attempted to address this concern in its additional conditions and safeguards by requiring that the "Bausher lot that remains must be a conforming lot."[7]

Section 611.18 of the zoning ordinance requires that there should be one parking space reserved for disabled drivers, with a minimum ratio of one disabled parking space for every 25 regular parking spaces. Section 613.7 of the zoning ordinance requires that site distances of driveways shall meet the requirements of PennDOT Publication 201, Engineering and Traffic Studies, section 201.6.16. Nothing in the plan, or in any of the evidence presented by the school district, establishes that these requirements of the zoning ordinance will be met.

These deficiencies are not cured by an expectation or promise that the conditions would be adequately addressed at a later stage of the process. Section 808.3 states that the "applicant shall demonstrate, as a condition to approval of his application, that the standards in 808(3) and those specified elsewhere in this chapter for the use in question will be met." The school district argues that this provision merely requires compliance with the five enumerated standards, for the zoning ordinance does not enumerate any other "standards" for use of land as a school facility. However, as stated, the first paragraph of 808(3), entitled "Standards", includes "specific standards established by the zoning ordinance, *and all other applicable zoning district requirements and general regulations.*" (emphasis supplied)

---

7. Condition M.

We also find that the board's action in premising the approval of the application on additional conditions which, when met, would bring the application into compliance with the zoning ordinance, is improper. In the case of *Edgmont Township v. Springton Lake Montessori School Inc.,* 154 Pa. Commw. 76, 79-80, 622 A.2d 418, 419-20 (1993), the Commonwealth Court, in reviewing the granting of a special exception on condition that the school applicant bring its plan into compliance prior to occupancy, stated:

"To be entitled to receive a special exception it was incumbent on the school to come forward with evidence detailing how it was going to be in compliance with the requirements necessary to obtain a special exception to operate a preschool in a R-1 zoning district. *N. Pugliese Inc. v. Palmer Township Zoning Hearing Board,* 140 Pa. Commw. 160, 592 A.2d 118 (1991). Evidence is not a 'promise' that the applicant will comply because that is a legal conclusion the board makes once it hears what the applicant intends to do and then determines whether it matches the requirements set forth in the ordinance. In *Appeal of Baird,* 113 Pa. Commw. 637, 641, 537 A.2d 976, 978 (1988), a zoning hearing board denied an applicant a special exception to operate a dog kennel on 11.86 acres of land because the applicant failed to show compliance with ordinance requirements applicable to buildings in the zone in question. Overturning the board, the trial court held that because the lot was in excess of 11 acres, it was self-evident that the parcel was large enough to provide for any building configuration necessary to meet the zoning ordinance requirements. Reversing, we held that the board properly denied the special

exception because an applicant is required to show at the time of the hearing that it met the requirements of the ordinance.

"The failure of the promise to establish sufficient evidence of compliance is not cured by a condition contained in the board's decision that the school meet the requirements of the ordinance prior to occupying the property. In *Lafayette College v. Zoning Hearing Board of the City of Easton,* 138 Pa. Commw. 579, 587, 588 A.2d 1323 (1991), we overturned the grant of a special exception where the plan submitted to the board did not comply with the on-site parking requirement necessary to obtain a special exception even though the grant of the special exception was conditioned on the applicant obtaining off-site parking. Rejecting that the off-site parking condition cured its failure to meet the specific requirement of on-site parking, we held that the proper function of a condition imposed upon a special exception is to reduce the adverse impact of that permitted use, and not to enable the applicant to meet its burden of showing that it met the requirements necessary to obtain a special exception.[4] *Id.* at 586, 588 A.2d at 1326. The standard to be observed by the board is whether the plan as submitted complies with specific ordinance requirements at the time the plan comes before it. *Id.* at 588, 587 A.2d at 1327; see also, *Baird.*

"4. In other words, a zoning board has power to impose conditions restricting a use or permission if the evidence indicates that a proposed use or permission will have an adverse effect sufficient to justify the denial of an exception. The zoning board is obligated to reduce that impact to an acceptable level, if it can, by imposing conditions,

rather than by denying the exception. Ryan, Pennsylvania Zoning Law and Practice §5.2.7."

Citizens also correctly point out that the application itself is defective. Under the terms of section 808.1, the application for conditional use approval shall include all information specified for a zoning permit application as set forth in section 801. The information required specifically calls for such things as an "exact location" on the lot of all existing and proposed buildings, use, height, length, width, and proportion of the total lot area covered of all proposed and existing buildings, locations, dimensions and design of parking and loading areas, including size and arrangement of all spaces and means of ingress, egress, recreation areas, buffer yards and landscaping, location of all utility lines, method of proposed water supply and sewage disposal, and all streets, right-of-ways and easements on or adjacent to the lot. It is undisputed that the application does not provide these details. In fact, the application is vague and general, it being apparent that final decisions have not been made on locations and dimensions of the buildings, or the site in general. In correspondence dated March 30, 2006, addressed to the township manager, the school district's architect, in forwarding a copy of a "conceptual site plan" states: "Please understand this is a conceptual design drawing and is not to be considered a final arrangement on location of building, parking area or internal road configuration. However, the conceptual drawing offers an opportunity for EI Associates to acquaint township officers with a possible direction for the project."

A sufficient application is important because the information required provides a necessary framework,

specifically defining the applicant's proposal. As stated in section 808.1, the information is "necessary to allow the township supervisors to determine that all requirements of this chapter have been met." Proceeding without providing proper information through the application severely hampers meaningful review by the board on the appropriateness of the conditional use. Additionally, a stated requirement of the zoning ordinance would be ignored. See *In re Appeal From Decision of Board of Supervisors of Penn Township,* 62 D.&C.4th 492 (Lancaster Cty. 2002).

For the aforesaid reasons, we hold that the Board of Supervisors of Exeter Township erred in its finding that the school district satisfied all the conditions set forth in the zoning ordinance necessary to satisfy the conditions for conditional use approval. This court Reverses the decision of the board granting conditional use.

The school district has requested, in the event of an adverse ruling, that the matter be remanded to the board for further proceedings. The remand, however, is not appropriate under these facts and circumstances. For the court to issue a remand, it must first determine that the record before the board is incomplete. A record before a local agency is determined to be full and complete if "there is a complete and accurate record of the testimony taken so that the appellant is given a base upon which he may appeal, and also, that the appellate court is given a sufficient record upon which to rule on questions presented." *Monaghan v. Board of School Directors of Reading School District,* 152 Pa. Commw. 348, 353, 618 A.2d 1239, 1241-42 (1992). When the record is

complete, a trial court is without authority "to remand the matter to the [board] to give [a party] another opportunity to prove what he or she should have proved in the first place; [T]herefore, the record before the local agency is not considered incomplete based solely on the [party's] failure to present evidence available at the hearing." *Sparacino v. Zoning Board of Adjustment, City of Philadelphia,* 728 A.2d 445, 448 n.4 (Pa. Commw. 1999) citing *Monaghan, supra.*

Here, the school district had ample opportunity to present its case. It is not complaining that the record is deficient or that it needs to be augmented in any way. A remand would simply give the school district the opportunity to start over, in essence, getting a "second bite of the apple."

We enter the following order:

## ORDER

And now, December 11, 2006, upon consideration of the land use appeal filed by Concerned Citizens of Exeter Township Inc., Jack Bertolet, James Focht and Linda Focht, and J. Kim Kolakowski, the response thereto, briefs filed by the parties, review of the record, and after argument held, the appeal is sustained. The order of the Board of Supervisors of Exeter Township dated July 6, 2006, granting Exeter Township School District approval for a conditional use to construct an elementary school building on premises currently owned by Jordan L. Bausher and Elizabeth M. Bausher, is reversed. The aforesaid conditional use of the Exeter Township School District is hereby denied.