618 A.2d 1239

**Thomas J. MONAGHAN, III, Appellant,**

**v.**

**BOARD OF SCHOOL DIRECTORS OF READING SCHOOL DISTRICT, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 1992.

Decided Dec. 23, 1992.

Scott C. Painter, for appellant.

Kathleen D. Dautrich, for appellee.

Before PALLADINO and SMITH, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

Thomas J. Monaghan, III (Monaghan) appeals from an opinion and order of the Court of Common Pleas of Berks County that affirmed the decision of the Board of School Directors of Reading School District (School Board) which terminated Monaghan from his position of employment with the Reading School District (school district). We affirm.

On May 5, 1986, Monaghan was hired as the school district's business manager.[1] On August 29, 1990, the Superintendent of Schools, James S. Goodhart (Goodhart) notified Monaghan by letter that he was suspended without pay. The August 29, 1990 letter also informed Monaghan that Goodhart intended to recommend to the Board that he be permanently removed pursuant to Section 1089(c) of the Public School Code of 1949 [2] (Code), 24 P.S. § 10–1089(c), due to incompetency, neglect of duty, violation of the school laws of the Commonwealth and other improper conduct. On September 7, 1990, Monaghan requested a hearing before the School Board and a more detailed statement of the charges levied against him. By letters dated October 10 and 17 of 1990, the school district's solicitor advised Monaghan's counsel of 14 specific charges which formed the basis for the suspension and recommended termination. (Exhibits D–5 and D–6.) Several hearings were held before the School Board at which 17 witnesses testified and over 100 exhibits were admitted. On January 7, 1991, the School Board issued an adjudication whereby it determined that Monaghan was properly suspended on August 29, 1990 and dismissed him from employment.[3]

1. Monaghan's title was subsequently changed by the school district to one of assistant to the superintendent for support services and/or assistant to the superintendent for business affairs. As assistant to the superintendent for support services, Monaghan agreed to serve as the chief financial officer of the school district. Monaghan also served as the school district's treasurer from July 1, 1986 through June 30, 1990.

2. Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1–101—27–2702.

3. The Board's decision of January 7, 1991 incorporated the Board's general resolution, GR1, of the same date, which terminated Monaghan's employment.

Monaghan appealed the School Board's decision to the Court of Common Pleas of Berks County which, without taking any additional evidence, entered an order on August 22, 1991 denying his appeal. In affirming the decision of the School Board, the trial court determined that the exhaustive record did not indicate that the School Board abused its discretion, acted illegally or unconstitutionally. The trial court held that the School Board properly dismissed Monaghan for improper conduct, incompetence, and violation of school laws. Monaghan filed this appeal.

■ We begin by noting that it is undisputed that the School Board is a local agency and that a final decision by a local agency is an adjudication[4] subject to review by this Court pursuant to Section 754 of the Administrative Agency Law, 2 Pa.C.S. § 754. *See Big Spring School District Board of Directors v. Hoffman by Hershey,* 88 Pa.Commonwealth Ct. 462, 489 A.2d 998 (1985). Where a local agency develops a complete record and the trial court takes no additional evidence, our scope of review is limited to whether the local agency's adjudication violated appellant's constitutional rights, committed error of law or violated provisions of the local agency law, or made findings of fact necessary to support its adjudication which were not supported by substantial evidence. 2 Pa.C.S. § 754(b); *Board of Licenses and Inspection Review v. Mirowitz,* 103 Pa.Commonwealth Ct. 415, 520 A.2d 558, *appeal denied,* 516 Pa. 643, 533 A.2d 714 (1987).

■ Monaghan contends that the trial court erred as a matter of law and abused its discretion in failing to hear his appeal on a *de novo* basis or remand the matter to the School Board for the purpose of making a full and complete record as

4. A local agency is defined as "[a] government agency other than a Commonwealth agency." *See* Section 101 of the Administrative Agency Law, 2 Pa.C.S. § 101. An adjudication is defined as "[a]ny final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made . . . ." *Id.*

provided for in Section 754(a) of the Administrative Agency Law.

Section 754(a) provides as follows:

In the event of a full and complete record of the *proceedings before the local agency* was not made, the court *may* hear the appeal *de novo,* or may remand the proceedings to the agency for the purpose of making a full and complete record or for further disposition in accordance with the order of the court. (Emphasis added.)

2 Pa.C.S. § 754(a).

Section 754(a) of the Administrative Agency Law gives the trial court discretion as to the manner of implementing a deficient record before the local agency. *See Tomlinson by Tomlinson v. Pleasant Valley School District,* 84 Pa.Commonwealth Ct. 518, 479 A.2d 1169 (1984) (where no record of proceedings before the school board which lead to the expulsion of students was made, the trial court was empowered to hear the students' appeal *de novo* ); *Geissler v. Board of Commissioners of Upper Dublin Township,* 76 Pa.Commonwealth Ct. 426, 463 A.2d 1284 (1983) (a trial court is not obligated to conduct a *de novo* hearing unless a full and complete record of the proceedings was not made before the local agency). Thus our inquiry is directed toward the adequacy of the record before the School Board. In *Springfield School District v. Shellem,* 16 Pa.Commonwealth Ct. 306, 328 A.2d 535 (1974), this Court addressed the issue of whether there was a "full and complete record of the proceedings before the local agency" and whether a *de novo* hearing was warranted. Quoting language from a prior case, we stated that:

"The crucial aspect on appeal is whether there is a complete and accurate record of the testimony taken so that the appellant is given a base upon which he may appeal, and also, that the appellate court is given a sufficient record upon which to rule on questions presented."

*Springfield School District,* 16 Pa.Commonwealth Ct. at 312, 328 A.2d at 538, (quoting *Sharp's Convalescent Home v.*

*Department of Public Welfare,* 7 Pa.Commonwealth Ct. 623, 628, 300 A.2d 909, 911 (1973)).

Monaghan contends that the record of the proceedings before the School Board was not full and complete since: 1) the final state audit of the school district was not available at the time of the proceedings; 2) the school district solicitor refused to testify claiming the attorney/client privilege was in effect and; 3) the Unemployment Compensation Board of Review subsequently determined that he was not ineligible for unemployment compensation benefits pursuant to Section 402(e) of the Unemployment Compensation Law, 43 P.S. § 802(e), dealing with willful misconduct. Since Monaghan's first and third reasons are similar in that they both involve matters occurring subsequent to the proceedings before the School Board, we will address both reasons at the same time.

■ Section 754(a) of the Administrative Agency Law, 2 Pa.C.S. § 754(a) specifically provides that if "[i]n the event of a full and complete record of the proceedings before the local agency was not made, the court may hear the appeal *de novo,* or may remand...." Monaghan does not argue that the final state audit report or the decision of the Unemployment Compensation Board of Review were available but not introduced at the time of the School Board's proceedings. Monaghan concedes that the report and the award were formally issued subsequent to the School Board's decision. Thus, since the final state audit report and the unemployment award were not made until after the School Board's decision, Monaghan cannot now argue that the record was not full and complete because it did not contain something that did not exist at the time of the School Board's proceedings. *See Lawrence Township Appeal,* 117 Pa.Commonwealth Ct. 508, 544 A.2d 1070 (1988) (evidence allegedly discovered after a hearing before the township board of supervisors would not warrant finding "incomplete" record in proceedings before township board so as to support trial court's hearing appeal *de novo* pursuant to local agency law).

■ Monaghan also argues that his ability to develop evidence before the School Board was improperly hampered by the attorney/client privilege and, as such, a full and complete record of the proceedings before the School Board was not made. At the November 14, 1990 hearing before the School Board, John Stott (Stott), the solicitor for the school district, refused to testify until the school district would agree to waive the attorney client privilege. Stott was dismissed subject to being recalled at a later date pending the School Board's vote on whether it would waive its attorney/client privilege.[5] At a public meeting on November 19, 1990, the School Board adopted Resolution I, which provided as follows:

RESOLVED, That the Reading School District hereby consents to John M. Stott, Esquire, giving testimony in the proceeding before it concerning Thomas J. Monaghan, III, the school district and counsel for Mr. Monaghan having agreed that such testimony shall be limited to the following areas:

1. Mr. Stott's knowledge, work, opinions and advice relating to certain employment contracts concerning Mr. Monaghan, Dr. James Henderson, Dr. Jeanne Fulginiti, and Mrs. M. Melissa Jamula.

2. Mr. Stott's knowledge, work, opinion, and advice relating to certain actions done pursuant to the said employment agreements, including: payments to employees for expenses, retirement benefits, vacation and sick leave, credit cards, motor vehicles, and country club memberships.

(Exhibit D–75.)

At the November 27, 1990 hearing before the School Board, Monaghan's counsel elected not to call Stott as a witness claiming that the waiver of attorney/client privilege did not give sufficient leeway for his proposed examination.[6] Having not taken the opportunity to examine Stott, Monaghan cannot now claim that the record of the proceedings before the School

5. At the hearing, with only seven of the School Board's nine members present, the School Board voted 4 to 3 to tentatively not waive its attorney/client privilege.

6. Monaghan's counsel asserted at the time of the hearing, that he never agreed, as was stated in the resolution, to limiting Stott's testimony.

Board was not full and complete since Stott was available to testify but was never recalled.

Applying the *Springfield School District* criteria to the instant matter, we conclude that there was a full and sufficient record upon which the trial court could resolve the issues presented. Therefore, having concluded that a full and complete record of the proceedings was made before the School Board, the trial court's proper scope of review is set forth in Section 754(b) of the Administrative Agency Law. Accordingly, the trial court did not err by failing to conduct a *de novo* hearing or remand the proceedings. *See Parkway Garage, Inc. Appeal,* 139 Pa.Commonwealth Ct. 240, 590 A.2d 79, *petition for allowance of appeal denied,* 529 Pa. 625, 600 A.2d 540 (1991).

 Monaghan next contends that the School Board's findings which were necessary to support its adjudication were not supported by substantial evidence. Monaghan argues that the record lacked substantial evidence of incompetence, neglect of duty or violation of the school code and the laws of Pennsylvania. Monaghan, in his brief, incorrectly asserts that Section 754(b) of the Administrative Agency Law requires that "all" findings of fact be supported by substantial evidence. Section 754(b) provides, in relevant part, that the trial court shall affirm the adjudication unless "any finding of fact made by the agency *and necessary to support its adjudication* is not supported by substantial evidence." 2 Pa.C.S. § 754(b) (emphasis added). Thus, the trial court is obligated to affirm the adjudication of the agency when a finding of fact is supported by substantial evidence and that finding of fact is necessary to the adjudication. The fact that a particular finding of fact may not be supported by substantial evidence, is not, in and of itself, reason alone for the trial court not to affirm the adjudication of the local agency. In order for the trial court not to affirm the adjudication, the finding of fact must be unsupported and necessary to the adjudication; an unsupported finding of fact which is not necessary to the adjudication merely constitutes harmless error.

█ The essence of Monaghan's argument is that his suspension and dismissal were not supported by substantial, competent and legally sufficient proof of incompetence, neglect of duty or violation of the school code. The trial court noted that Monaghan and the School Board agreed that his dismissal is governed by Section 1089(c) of the Code, 24 P.S. § 10–1089(c), which provides as follows:

> Unless otherwise specified in an employment agreement, the governing board shall, after due notice, giving the reasons therefor, and after hearing if demanded, have the right at any time to remove a business administrator for incompetency, intemperance, neglect of duty, violation of any of the school laws of this Commonwealth or otherwise improper conduct.

Where, as here, there is more than one charge, it is not incumbent upon the School Board to establish every element of every charge referenced in the notice of charges; the trial court need only determine that substantial evidence exists to support the findings of fact necessary to support one of the specific charges warranting dismissal.

█ In his brief, Monaghan fails to specify which if any of the School Board's specific findings necessary to its adjudication are unsupported by substantial evidence. Instead, Monaghan discusses each of the charges individually and offers a summary of the evidence and an argument in defense of each accusation. In so doing, Monaghan does not contend that the School Board's findings are not supported by substantial evidence, but rather that the School Board ignored evidence which justified his conduct.

The School Board determined that during his course of employment with the school district, Monaghan was incompetent in the performance of his duties, acted in an improper manner, and violated numerous provisions of the school code. In support of its adjudication, the School Board made the following relevant findings of fact with respect to the following charges: unauthorized payments to Jeanne M. Fulginiti (Findings of Fact 8–10); unauthorized and improper use of credit cards (Findings of Fact 11–20); unauthorized receipt of vaca-

tion days (Findings of Fact 21–23); unauthorized and improper payments for tax liability (Findings of Fact 24–28); unauthorized and improper travel expenses (Findings of Fact 29–37); incompetence regarding the school budget and deficit (Findings of Fact 38–49, 51–52); incompetent record keeping (Finding of Fact 53); unauthorized use of motor vehicle lease-purchase agreements (Finding of Fact 54); unauthorized payment of retirement benefits to James Henderson (Finding of Fact 55); and unauthorized and improper payment of country club fees (Findings of Fact 56–58).

Our examination of the record reveals the existence of substantial evidence to support all of the aforementioned findings of fact, although we need only find substantial evidence of the findings of fact necessary to support one of the charges in order for us to affirm Monaghan's dismissal. In particular, the record reveals that Monaghan allowed numerous disbursements of the school district's funds to be made without proper authorization or adequate control in violation of Sections 607, 517, 439 and 508 of the Code.[7] Monaghan does not dispute that he was responsible for the preparation of the school district's budget and monitoring of its expenditures and does not contest that during his supervision of the same, the school district incurred a deficit in excess of 10 million dollars. The record contains substantial evidence that Monaghan's conduct during his employment constituted neglect if not willful disregard of his duties concerning accounting and budgetary matters. Accordingly, there was substantial evidence to support the School Board's dismissal of Monaghan and no errors of law were made.

**7.** Section 607 of the Code provides in relevant part that no school funds shall be expended unless there are sufficient funds in the treasury of the district to pay the same. *See* 24 P.S. § 6–607. Section 517 of the Code provides for the reimbursement of all necessary travel and hotel expenses to persons authorized to attend any educational conferences upon the presentation of an itemized, verified statement of such expenses. *See* 24 P.S. § 5–517. Section 439 of the Code prohibits payments without School Board approval. *See* 24 P.S. § 4–439. Section 508 of the Code requires an affirmative vote by a majority of the School Board prior to the school district's entering into a contract. *See* 24 P.S. § 5–508.

## ORDER

AND NOW, this 23rd day of December, 1992, the order of the Court of Common Pleas of Berks County is affirmed.