# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| Carson Concrete Corp., | | : | |
| | Appellant | : | |
| | | : | |
| v. | | : | No. 179 C.D. 2017 |
| | | : | |
| Tax Review Board | | : | |
| City of Philadelphia | | : | |
| | | | |
| Carson Concrete Corp., | | : | |
| | Appellant | : | |
| | | : | |
| v. | | : | No. 180 C.D. 2017 |
| | | : | Argued: October 19, 2017 |
| Tax Review Board | | : | |
| and City of Philadelphia | | : | |

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                   HONORABLE ROBERT SIMPSON, Judge
                   HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**OPINION**
**BY JUDGE SIMPSON**                              **FILED: December 21, 2017**


In these consolidated tax appeal cases, Carson Concrete Corporation (Carson) appeals from an order of the Court of Common Pleas of Philadelphia County[1] (trial court) that affirmed decisions of the City of Philadelphia's Tax Review Board (Board). The Board denied Taxpayer's petitions to review an audit assessment bill issued by the City for: (a) Business Income and Receipts (BIR) Taxes for the years 2000-2009; and, (b) Wage Tax for the years 2001-2009. For the reasons that follow, we affirm in part (as to the underlying tax liability), and vacate and remand in part (as to interest and penalties).

## I. Background

---

[1] The Honorable Abbe F. Fletman presided.

Carson is a concrete construction company operating in the City of Philadelphia (City), its regional suburbs, Atlantic City, New Jersey and Miami, Florida. Carson has been in business for 47 years. Carson's president, Anthony J. Samango, Jr. (President) has been with Carson since 1968. In or about 2008, Carson moved its headquarters from Conshohocken in Montgomery County to Boothwyn in Delaware County. Carson asserted that as a result of a flood, it lost the actual contracts it had with subcontractors from 2000 to 2008. Therefore, these contracts did not make it to the relocated office.

Carson's President testified before the Board that in 2000 Carson began facing skyrocketing workers' compensation insurance rates, which were three times its competitors' rates, because of jobsite accidents. As a consequence, the business climate and culture changed dramatically. To remain competitive, Carson decided to place all its field workers on subcontractors' payrolls for cost plus a fee. Therefore, after 2000, Carson asserts it did not have any of its own employees working in the City. Rather, for the next several years, the bulk of Carson's unionized field workers were employees of subcontractors. During that time, Carson maintained a small staff of managers and administrators at its office in Boothwyn, Pennsylvania. All of the employees paid local municipal taxes.

In its decision, the Board noted, from 2000 to 2009, Carson did business in the City but did not file any BIR Tax returns, did not pay any BIR Tax, and did not pay any Wage Tax. Ultimately, the City became aware of Carson's failure to file tax returns or pay BIR or Wage Taxes.

In September 2011, the City's Department of Revenue (Department) conducted an audit assessment of Carson, which resulted in an assessment for BIR Tax liabilities and Wage Tax liabilities. Following the audit, the City assessed Carson $1,091,787.45 in BIR Tax ($65,709) and Wage Tax ($1,026,078.45) attributed to concrete construction laborers, which Carson contended were not its employees, but employees of subcontractors. With interest and penalties, the City's tax bill exceeded $4,000,000.

After the City completed the audit, Carson requested a re-audit. In support of its request, Carson identified only one subcontractor, CIP Frames. Carson also provided invoices, bank statements and checks in support of its contention that employees of subcontractors, not Carson employees, performed the work in the City. Finding discrepancies among Carson's documents, which also lacked detail, the Department denied Carson's request for a re-audit.

Carson filed two separate petitions for review with the Board challenging the assessments for both the BIR Tax and Wage Tax. After several continuances, the Board conducted a hearing on both petitions. Thereafter, the Board granted a 60-day period for the parties to submit briefs and supplement the record.

As discussed above, President testified at the hearing that in the year 2001, in response to ultra-high workers' compensation premiums resulting from past accidents, Carson placed its field workers on subcontractor payrolls and thus no longer had any of its own employees working on City projects. Bd. Hr'g, 2/10/15,

3

at 73; Reproduced Record (R.R.) at 212a. Consequently, in 2000, Carson had 100 employees employed in the City and paid the Wage Tax for them. Id. However, the next year there were no Carson employees working in the City. Id. Rather, Carson paid the subcontractor cost plus a fee. Bd. Hr'g at 25; R.R. at 213a.

However, the City's Auditor, Lisa Bratz (Auditor) testified that the documents from CIP Frames, the only named subcontractor, appeared deceitful. In particular, Auditor testified:

> [E]ach invoice matched the total on a weekly basis, but all it said was, for work done on 7/10 and then the money amount. <u>So there was no saying where the job was, who worked on the job. There was no detail to any of the invoices. It just looked like invoices were made up</u>.

Bd. Hr'g at 73; R.R. at 261a (emphasis added).

When asked whether these types of invoices looked like typical invoices, Auditor replied: "No, because they weren't detailed at all. I've never seen such plain invoice sheets of paper." Id.

In April 2016, after orally announcing its decision to deny Carson's review petitions, the Board issued decision letters officially denying Carson's petitions.

> In its decision, the Board made the following findings:
>
> 1) Following an audit by the [City] Department of Revenue, [Carson] filed this appeal of the audit assessments of:

4

[BIR Tax] for the years 1998 through 2010, Principal due of $65,709 with interest of $78,581.12 and penalty of $128,751.54 as of the [Board] hearing date, for a total due of $273,041.60.

Wage Tax for the years 2001 through 2009; Principal due of $1,026,078.45, with interest of $1,205,487.27 and penalty of $1,783,105.10 as of the [Board] hearing date, for a total due of $4,014,670.82.

2) [Carson] is a concrete construction company with its offices in Boothwyn, PA. [President] testified on behalf of [Carson] about its business activity and labor practices during the audit years, and his role regarding the actual work sites and the work of his son [Anthony J. Samango, III, Carson's Vice-President].

3) Carson did business in the [City] and in the surrounding suburbs before, during and after the tax years in question. [Carson] provided [Auditor] with a project list that confirmed work on City projects during the audit years.

4) [Carson] was a non-filer for [BIR Tax] and Wage Tax for all years under audit[.]

5) Prior to 2000, [Carson] filed [BIR Tax] returns and remitted taxes due the [City] and remitted Wage Tax for employees residing and/or working in [the City].

6) From 2000 through 2009, [Carson] did not file [BIR Tax] returns and did not remit [BIR Tax] or Wage Tax to the City.

7) In 2000, [Carson] had approximately 100 employees.

8) [President] testified to having only 4 to 10 employees from 2001 to 2009.

9) During the audit years, Carson had between 4 and 10 management and central office employees operating in their [sic] suburban office. These employees did not work or reside in [the City]. Most were not working at [Carson's] job sites.

5

10) [President] and [Vice-President] were intimately involved with all work sites. They bid the job and once the contract was awarded to [Carson], they would determine the equipment needed, what categories of skilled and unskilled workers were required and how many, and deal with work site issues as they came up.

11) [President] testified that all work was done with subcontractors paid a cost plus [markup] amount. But there was no information to establish that any subcontractors handled employee or work site issues.

12) For the City's audit, [Carson] only provided documentation and records for its work projects and labor costs for 2000. No documents or records were available for the audit years. Records were lost during an office move.

13) [Carson] was able to provide copies of its federal tax returns for the years under audit.

14) To determine the Wage Tax assessment, [Auditor] used actual wages & labor costs reported on [Carson's] federal tax returns from 1999-2009. [Auditor] used the 2000 year ratio of labor costs attributed to the [City] for all audit years in absence of any records to the contrary from [Carson].

15) [Carson's] federal tax returns did not itemize deductions for gross payments to subcontractors. The returns itemized direct labor and payroll costs designated for employees, including union dues for its workers.

16) [President] testified that his accountant took the labor costs from the subcontractor invoices and transferred those expenses directly to [Carson's] tax returns although those expenses were paid by subcontractors. This did not include any of the [markup] that [President] testified would have been payable to a subcontractor as profit.

17) As to the [BIR Tax] assessment, [Auditor] accepted [Carson's] federal tax returns as correctly documenting its income and expenses for each year. This resulted in a $0

6

assessment for the net income of the [BIR Tax]. The assessment under appeal is the tax amount due for the gross receipts portion of the [BIR Tax], calculated by applying the statutory tax rate to the gross receipts offered by [Carson] for business activity conducted in [the City]. No changes were made to [Carson's] reported gross receipts.

18) [Carson] did not refute that during the years under audit [Carson] performed work in [the City]. There were gross receipts attributable to [City] business activity.

19) [President] testified that from 2001 until 2010, the audit years, the company changed its way of business to a model where all projects were handed to independent subcontractors who used their own employees for all work. [President] testified that [Carson] did not employ its own workforce to complete its projects[.] Its only employees were the small office staff in Boothwyn. Only subcontractors and independent contractors were hired for the job sites.

20) Currently, for post audit years, [Carson] is again using its own employee workforce for its projects.

21) [Carson] did not have copies of any subcontractor contracts or other documentation of its subcontractor or independent contractor relationships. [President] could not name a single subcontractor he engaged.

22) Carson continued to advertise in the marketplace that it did not use subcontractors, during all years under audit. [Auditor] produced website pages for several years continuing to show this claim. Information and photos for their various projects were changed and updated through the audit years to show current projects.

23) After the audit, [Carson] provided [Auditor] with the name CIP Frames Incorporated as its subcontractor. Check copies and invoice copies were also provided to [Auditor]. The checks and invoice copies did not match up or reconcile.

7

Bd. Op., 4/21/16, Findings of Fact (F.F.) Nos. 1-23 (emphasis added); R.R. at 13a-15a.

In its Conclusions of Law, the Board determined Carson did not refute that it engaged in business activity in the City during all years under audit. Bd. Op. at 4; R.R. at 15a. The Board also accepted Auditor's assessments of the BIR Tax and declined Carson's request for a modification of that assessment. Id.

The Board further determined that the Wage Tax assessment was calculated using Carson's federal tax returns for the audit period, which listed direct labor costs, payroll taxes and union dues for employees. Bd. Op. at 4-6; R.R. at 15a-17a. To that end, the Board reasoned that neither Carson's federal tax returns nor President's testimony provided a sufficient basis to determine that the Wage Tax assessment was incorrect. Bd. Op. at 6; R.R. at 17a. To that end, the Board observed that President testified Carson had a large labor force of about 95-100 employees during the post-audit and pre-audit years. Id. Although President testified Carson had no actual labor force during the audit years, Carson's federal tax returns continued to show large direct labor costs for all years, with no indication that subcontractors were actually providing the labor during the audit period. Id.

Accordingly, the Board denied Carson's appeal petitions as to both the BIR Tax and Wage Tax. Id. Carson timely appealed the Board's decisions to the trial court, which consolidated the appeals.

8

On January 10, 2017, following oral argument, the trial court denied Carson's appeal and affirmed the Board on all issues. In its decision, the trial court first determined the Board properly imposed direct liability upon Carson under Section 19-1504(1)[2] (collection at source, employer shall deduct Wage Tax at time of payment) and Section 19-1507(1)[3] (liability of persons to collect, account for and pay over wage taxes, liability for full amount of tax) of the Philadelphia Code.

To that end, the trial court noted that vicarious liability under Section 19-1507(2) (an entity that exercises significant control over the financial affairs of an employer may be held liable for another employer's tax liability) did not apply here. Rather, the Board held Carson itself <u>directly liable for wages paid to its own employees</u> under Section 19-1504(1). In other words, the Board did not seek to collect the taxes from President or any other individual under Section 19-1507(2).

The trial court next determined the City met its *prima facie* burden in a tax appeal, and Carson failed to rebut it. The court noted that in a tax appeal before

---

[2] Section 19-1504(1) of the City Code provides that each employer within the City who employs one or more persons on a salary, wage, commission or other compensation basis shall deduct at the time of payment thereof, the tax imposed by this Chapter on the salaries, wages, commissions and other compensation due from the said employer to the said employee, except that due to employees engaged as domestic servants, and shall make a return and pay the Department the amount of tax so deducted at such intervals as the Commissioner shall establish by regulations.

[3] Section 19-1507(1) of the City Code provides that any person required to collect, truthfully account for, and pay over any tax imposed by this Chapter on salaries, wages, commissions and other compensation who fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall be liable for the full amount of such tax.

the Board, the taxing authority need only put its assessment into evidence to set forth a *prima facie* case. Green v. Schuylkill Cnty. Bd. of Assessment, 772 A.2d 419 (Pa. 2001). Further, the Board, as fact-finder, determines the credibility and weight of the evidence presented. Hinkle v. City of Phila., 881 A.2d 22 (Pa. Cmwlth. 2005).

Here, the trial court observed, the City entered its audit results into evidence, and the Board properly decided that Carson failed to successfully rebut the City's evidence. Although President testified that subcontractors performed all work in the City from 2001-2009, the Board found President's assertions lacked credibility. In particular, the trial court noted the Board, in ruling against Carson, based its determination on the following:

> (1) Carson's failure to provide any documentation to support the testimony of President and Vice-President;
>
> (2) Carson's failure to identify more than one purported subcontractor, to produce even a single contract with any subcontractor, or any credible record of payments to subcontractors;
>
> (3) The fact that Carson reported direct labor costs, payroll taxes and union dues for employees well beyond the 4-10 office workers it admitted;
>
> (4) Carson's own advertising stated that it used no subcontractors; and,
>
> (5) The amount of control Carson exercised over its work sites in the City, including choosing all equipment and determining which workers were needed at which sites.

See Tr. Ct., Slip. Op., 1/10/17, at 7. Based on its review of the record, the trial court determined the Board did not err in finding Carson liable for Wage Taxes for the years 2001 through 2009. Id.

Further, the trial court rejected Carson's contention that the Board did not base its decision on substantial evidence. In particular, the trial court noted the Board properly recognized that the record contained no subcontractor agreements. Nonetheless, the trial court further observed that the Board erred in finding that President could not name any subcontractors. See F.F. No. 22. However, although President eventually named CIP Frames as a subcontractor, F.F. No. 23, Carson presented no credible evidence that CIP Frames actually was a subcontractor, or that CIP Frames employed workers who labored on Carson's projects in the City. To that end, the trial court determined Auditor properly rejected Carson's documentation regarding CIP Frames because it contained discrepancies and lacked the detail an experienced auditor would expect. In sum, the trial court reasoned, the record was replete with substantial evidence supporting the Board's decision.

In addition, the trial court determined that Carson was not entitled to either a remand to the Board or a *de novo* hearing before the trial court. The court noted that a party who appeals a local agency decision is entitled to a *de novo* hearing before a trial court only if the local agency failed to make a full and complete record below. 2 Pa. C.S. §754(a). The crucial aspect of this determination is whether there is a complete and accurate record of the testimony taken, and whether the appellate court has a sufficient record upon which to rule on the questions presented. Springfield Sch. Dist. v. Shellem, 328 A.2d 535 (Pa. Cmwlth. 1974).

11

The trial court further reasoned that the Legislature did not design 2 Pa. C.S. §754(a) to provide an appellant with an opportunity to present additional evidence which could have been presented at the initial hearing. Monaghan v. Bd. of Sch. Dirs. of Reading Sch. Dist., 618 A.2d 1239 (Pa. Cmwlth. 1992). Here, the court noted, Carson attached to its brief a document showing CIP Frames is a Pennsylvania corporation established in 2004 (Wage Tax audit period began in 2001) and still in business as of January 2016. The trial court found that Carson offered no explanation as to why it failed to produce this document at the Board hearing in November 2015 or during the 60-day period in which the Board agreed to accept additional evidence. Therefore, the court determined Carson's attachment of this document to its brief "in no way requires a *de novo* hearing, particularly since a full record exists." Tr. Ct., Slip Op., at 9 (emphasis added). The court also observed that a "full transcript and all the exhibits presented to the [Board] are part of a 564-page certified record on appeal." Id.

Finally, the trial court determined that it need not abate the BIR Tax penalties and interest. Here, the trial court noted Carson's notice of appeal sought only an abatement of penalties for the BIR Tax or any remaining Wage Tax. Pursuant to Section 19-1705(2) of the City Code, the Board may abate, in whole or in part, interest, penalties, or both, "where, in the opinion of the Board, the petitioner acted in good faith, without negligence and no intention to defraud." City Code §19-1705(2) (emphasis added). Pursuant to Section 19-1705(3) of the City Code, the filing of a petition for review is deemed to state a request for the waiver of interest and penalties.

Here, the trial court observed, the Board did not directly address Carson's request for a waiver of interest and penalties. However, the court continued, the Board's findings and conclusions include an *implicit* determination that Carson did not act in good faith and possibly intended to defraud the City. Notably, Auditor testified that only after the City completed the audit assessing more than $1,000,000 did Carson identify a single contractor. At the Board hearing, Carson failed to present any proof that CIP Frames existed. Further, the documents Carson belatedly produced included un-cancelled checks and invoices devoid of any detail about what jobs they related to or who worked on those jobs.

Under these circumstances, the trial court stated that although it possessed the authority to remand to the Board for a determination of whether Carson acted in good faith, it declined to do so. Tr. Ct., Slip. Op., at 10. To that end, the court reasoned, any such remand would waste agency resources because, on the record before the trial court, the Board already determined Carson did not act in good faith. Id.

Accordingly, the trial court denied Carson's appeal and affirmed the Board's decision. Carson appeals.[4]

---

[4] In local agency appeals where the agency record is complete and the trial court did not take additional evidence, the Commonwealth Court reviews the decision of the local agency, not the trial court. 2 Pa. C.S. §754(a); Clement & Muller, Inc. v. Tax Review Bd. of City of Phila., 659 A.2d 596 (Pa. Cmwlth. 1995). Where no additional evidence is taken by the trial court, our review, which is the same as the trial court, is limited to determining whether the Board's findings were supported by substantial evidence, and whether the Board erred as a matter of law or violated a party's constitutional rights. Clement & Muller.

## II. Discussion

### A. Wage Tax; Subcontractors

### 1. Argument

Carson first presents three related issues. Carson asserts: (1) the Board erred in finding the City audit attributing $1,205,487.27 in Wage Taxes owed by labor subcontractors for the years 2001 through 2009, where the evidence demonstrated that subcontractors, including CIP Frames, Inc. were the relevant taxpayers and employers, and where Carson did not have control over the financial affairs of the companies it hired as cost-plus-a-fee subcontractors, and Carson jobsites during the same audit period; (2) the Board erred in determining that union employees of labor subcontractors Carson hired during the audit period could be attributable to Carson, where that conclusion is not supported by the evidence, and where the Board capriciously disregarded contradictory evidence of subcontractor financials that the City introduced in its supplemental documents; and (3) the Board erred in determining the total number of Carson employees exceeded between 4-10 employees per annum at its office during the audit period, where Carson provided true and accurate W-2 Wage and Tax Statements for its employees consistent with that figure, as well as true and accurate Federal 941 Tax Forms showing Carson took a deduction for costs paid to labor subcontractors.

Carson first contends the Board erred in finding it vicariously liable for the underlying Wage Taxes of its subcontractors. Carson asserts Section 19-1507 of the City Code (liability of persons to collect, account for and pay over Wage Taxes, liability for full amount of tax) is modeled after Section 6672 of the Internal Revenue

14

Code (IRC), 26 U.S.C. §6672 (relating to failure to collect and pay over tax, attempt to evade or defeat tax),[5] which provides:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account and pay over such tax, or willfully attempts in any manner to evade or defeat such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of tax evaded, or not collected, or not accounted for and paid over.

Carson further asserts the IRC defines a "person" for purposes of 26 U.S.C. §6672 as "an officer or an employee of a corporation, or a member or employee of a partnership, who as such officer, employee or member is under a duty to perform the act in respect of which the violation occurs." 26 U.S.C. §6671(b).

Two requirements must be met for a person to be subject to liability under 26 U.S.C. §6672: (1) the person must be a <u>responsible person</u>, which means he is under a duty to collect such tax; and, (2) the person must willfully fail to perform that duty. <u>U.S. v. Carrigan</u>, 31 F.3d 130 (3d Cir. 1994). Therefore, Carson posits, City Council expressly intended that in order for a person to be liable under the Wage Tax statute, he must have "<u>significant control over the financial affairs of an employer</u> …." City Code §19-507(2) (emphasis added).

---

[5] Section 19-1507(5) provides: "This Section is modeled upon Section 6672 of the Internal Revenue Code (26 U.S.C. §6672), and it is City Council's intent that this Section be construed in the same manner that Section 6672 has been construed." City Code §19-1507(5).

15

The test for determining who is a responsible person is fact intensive. It requires a court to determine whether the person "has the final or significant word over which bills or creditors get paid." Carrigan, 31 F.3d at 133. In making this determination, the court must consider other factors including: (1) the duties of the officer as outlined by the corporate by-laws; (2) the ability of the person to sign corporation checks; (3) the taxpayer's signature on the employer's federal employment or other tax returns; (4) the identity of the officers, directors, and shareholders of the corporation; (5) the identity of the persons who hired and fired employees; and, (6) the identity of the persons who were in charge of the financial affairs of the corporation.

In support of its position, Carson cites this Court's decision in City of Philadelphia v. GoInternet Net, Inc., 935 A.2d 586 (Pa. Cmwlth. 2007). In GoInternet, we reversed a trial court's decision and determined that an employer's chief financial officer (CFO) was not a responsible person required to truthfully account for and pay over the City wage taxes. In GoInternet, the City argued, for purposes of liability under Section 19-1507(2) and (3), that the CFO exercised significant control over the company's financial affairs, making him a person required to collect the wage tax. To the contrary, the CFO argued that given the limited scope of his actual responsibilities, he could not, even if he wanted to, pay the 2003 City wage taxes.

In GoInternet, we noted that in order to determine whether a responsible person has control over an employer's finances, the court must consider the totality of the circumstances and that no single factor, or the absence thereof, is determinative. See Fiataruolo v. U.S., 8 F.3d 930 (2d Cir. 1993). The crucial inquiry

16

is whether the person has the effective power to pay the taxes, *i.e.*, whether, given his status within the corporation, he has the actual authority or ability to pay the taxes owed. In <u>GoInternet</u>, we recognized a corporate officer ceases to be a <u>responsible person</u> after he was stripped of responsibility for taxes. In short, we determined that once the CFO was no longer responsible for paying City taxes, he could not be considered a <u>responsible person</u> under a 26 U.S.C. §6672 analysis. By the time the 2003 City Wage Tax became due in February 2004, Mercantile Capital assumed control of GoInternet's accounts and forbade CFO from paying the wage tax. Consequently, CFO had no authority to pay the 2003 wage tax when it became due.

Here, Carson argues the distance between itself and its subcontractors is significantly greater than the distance between the CFO and the company in <u>GoInternet</u>. Carson and its subcontractors are separate companies. CIP Frames is one of potentially more labor subcontractors Carson used during the course of the audit period after being forced to do so by high workers' compensation insurance costs.

Carson also cites the Third Circuit's decision in <u>Carrigan</u>. There, the Court reversed the New Jersey District Court's grant of summary judgment upholding the Internal Revenue Service's (IRS) assessment of a 100% penalty under 26 U.S.C. §6672 against a company president for failure to pay federal employment taxes. On appeal, the Third Circuit noted that the company president was not responsible for handling the company's financial affairs. He did not prepare, maintain or have access to the corporate books, records or checkbooks. He did not prepare or sign any corporate tax returns. He did not handle any creditor's bills.

17

Therefore, the Court reasoned, it could not be said, as a matter of law, that he had significant control of the company's financial affairs. Based on the evidence, the Court held that a reasonable jury could find that president was not a responsible person for purposes of 26 U.S.C. §6672.

Similarly here, Carson argues, President testified Carson paid its labor contractors cost plus a fee. Further, Carson asserts its W-2s demonstrate that it had only 4 to 10 employees at its suburban headquarters during the audit period.

Although the Board found President's testimony regarding the audit period not credible, Carson maintains, the City provided no evidence to the contrary to show Carson was responsible for paying the Wage Taxes. To that end, Carson argues, the Board's conclusions are wholly speculative.

In particular, Carson asserts, the Board failed to point to anyone at Carson who was responsible in any way for the financial affairs of CIP Frames or any other subcontractor. Nobody at Carson was an officer of CIP Frames or any other subcontractor. Further, the evidence of record did not show anyone at Carson hired or fired CIP Frames' employees, or signed CIP Frames' checks or tax returns.

Although President and his son, Vice-President, provided direction to Carson's subcontractors and determined the types of laborers and equipment on its job sites, Carson maintains this evidence does not support a conclusion that anyone at Carson exercised significant control over the subcontractors' financial affairs as required by Section 19-1507 of the City Code.

18

For these reasons, Carson argues, the Board, without conducting any analysis of whether Carson could be held liable for the Wage Tax, adopted the City's unsupported and unreasonable conclusions. Because the Board's decision to hold Carson liable for the Wage Taxes unpaid by its subcontractors is unsupported by substantial evidence demonstrating liability under Section 19-1507 of the City Code, Carson requests that this Court reverse the trial court's order and remand with instructions to reverse the Board's decision and enter an order holding Carson not liable for the Wage Taxes during the audit period.

## 2. Analysis

The trial court properly determined the Board committed no error of law in finding Carson liable for payment of Wage Taxes for its unionized laborers during the nine-year audit period. In a tax appeal, the taxing authority need only put its assessment into evidence to set forth a *prima facie* case. <u>Green</u>. If the taxpayer fails to respond with credible, relevant evidence, then the taxing body prevails. Here, the City met its *prima facie* burden in the tax appeal, and Carson failed to rebut it.

To begin, the City presented its audit to the Board at its November 2015 hearing. To that end, Auditor testified as to her procedures and methods in determining the audit-assessed tax liabilities. <u>See</u> Bd. Hr'g, N.T. at 41-51; R.R. at 229a-239a. The burden then shifted to Carson to rebut the assessment's validity. At a hearing on a tax assessment appeal, the taxpayer, as petitioner, bears the burden of proof to show the assessment is invalid. <u>Ernest Renda Contracting Co., Inc. v. Commonwealth</u>, 532 A.2d 416 (Pa. Cmwlth. 1987).

19

Here, however, the Board determined that Carson's evidence in fact supported Auditor's findings that the alleged subcontractor employees were actually Carson employees. As discussed above, the Board, as the agency fact-finder, determines the credibility and weight of the evidence presented. Hinkle.

To determine the Wage Tax assessment during the audit period, Auditor testified she used the actual wage and labor costs reported on Carson's federal tax returns from 1999 through 2009. F.F. No. 14; Bd. Hr'g at 68-70; R.R. at 256a-258a. In particular, Auditor used the 2000 year ratio of labor costs attributed to the City for all audit years in absence of any records to the contrary from Carson. Bd. Hr'g at 68; R.R. at 256a. Id. Carson's federal returns for the audit period showed labor costs, deductions for payroll taxes and union dues throughout the audit period. Id.

Auditor further testified that if unionized employees actually worked for subcontractors, then the subcontractors, not Carson, would have been entitled to deduct the labor expenses. Based on this evidence, Auditor concluded that these hired employees, once they left the union halls, were the contractor's employees, *i.e.*, Carson's employees. Bd. Hr'g at 70; R.R. at 258a. Notably, Board Member George Matthews, a certified public accountant, observed that a contractor could not deduct payroll taxes for a subcontractor's employees. Bd. Hr'g at 90-91; R.R. at 278a-279a.

Further, in Finding of Fact No. 21, the Board found that Carson did not have any copies of subcontractor contracts or other documentation of its

20

subcontractor or independent contractor relationships. Although President testified that Carson subcontracted out project work at City job sites during the audit years, Carson could not provide the Board with proof of any such contracts, or records of payments to subcontractors. In fact, President could not name a subcontractor other than CIP Frames.

At the close of the hearing, Board Chairwoman Nancy Kammerdeiner stressed to Carson that it needed to produce some sort of documentation to support President's testimony that Carson employed subcontractors during the audit years. See Bd. Hr'g at 88-89; R.R. at 276a-277a. Acknowledging the 2008 flood and Carson's relocation, Chairwoman Kammerdeiner nevertheless stated that there must be some paperwork somewhere that survived which could back up Carson's claims. Id. Despite the Board's grant of a 60-day period to submit additional documentation, Carson failed to submit such documentation.

Moreover, in Finding of Fact No. 22, the Board found that Carson stated in a 2008 website advertisement that it did not use subcontractors. In response, President testified that Carson did not update its website in 15 or 16 years. See Bd. Hr'g at 57-58; R.R. at 245a-246a. The Board, however, found this testimony not credible. See Bd. Op. at 4; R.R. at 15a. To that end, the Board noted Carson regularly updated its list of projects, with accompanying photographs. Id.

In Finding of Fact No. 23, the Board found that after the City's audit, Carson provided Auditor with the name CIP Frames as its subcontractor. Carson also provided Auditor with copies of checks and invoices. During the Board hearing,

21

Auditor testified that the invoices looked like they "were made up." Bd. Hr'g at 73; R.R. at 261a. Auditor testified the invoices lacked any detail; the invoices did not indicate where the job was located or who performed the work. Id. Auditor further testified that in her business experience, she had not encountered such plain invoices. Id. In addition, Auditor testified there were inconsistencies between the checks and bank statements she received from Carson. Bd. Hr'g at 72; R.R. at 260a.

Auditor further testified that she notified Carson that she rejected the documentation as unacceptable. Bd. Hr'g at 74; R.R. at 262a. For this reason, Auditor denied Carson's request for a re-audit. Id.

In addition, the Board found that President and Vice-President were intimately involved with the work at all job sites. F.F. No. 10. They bid the job and would determine the equipment needed, what categories of skilled and unskilled workers were needed, and how many workers were needed. Id. They also dealt with any work site issues that came up. Id. These findings are also supported by President's testimony. See Bd. Hr'g at 52-55; R.R. at 240a-243a.

Having determined that the Board's challenged findings are supported by substantial evidence, we address Carson's argument that the Board erred in holding Carson vicariously liable for its subcontractors' Wage Tax payments under Section 19-1507(2) of the City Code for the nine-year audit period.

Contrary to Carson's contention, the Board determined Carson failed to present any credible evidence showing it used any subcontractors during the nine-

22

year audit period. The Board noted that Carson's federal tax returns continued to list direct labor costs, payroll taxes and union dues for well beyond its 4-10 office workers. Bd. Op. at 4; R.R. at 15a. In short, the nucleus of the Board's decision clearly shows that the City held Carson <u>directly liable for wages paid to its own employees</u> under Section 19-504(1). In other words, the Board did not seek to collect the taxes from President or any other individual or entity under Section 19-1507(2). As such, the Board's decision stated (with emphasis added):

> There was no doubt that during the audit period, [Carson] had business activity in the City and employed labor for these jobs. While [Carson] claimed any labor costs were paid by subcontractors who should be held responsible for any Wage Tax deficiencies [Carson] couldn't even name a subcontractor [it] had hired, either at the audit or in the Board hearing. <u>Any documentation before the Board pointed to [Carson] as the employer and therefore the responsible party for the Wage Tax</u>.

> <u>On its federal tax returns, [Carson] claimed deductions for wages, payroll taxes, and union dues, substantial indicators that [Carson] employed and would have direct control over the workers. There were no subcontractor payments listed on the federal returns</u>.

> Payroll expenses and union dues would have been paid by the subcontractors for their own employees and itemized by these subcontractors on their own returns as they would have then received a gross contract price to cover costs and profit from [Carson]. [Carson] as the contracting party would have itemized the gross amounts paid to any subcontractors, rather than the direct labor costs. <u>[Carson] testified to paying subcontractors a gross fee for costs plus a markup but had no evidence to substantiate this, either by way of its federal tax return information or copies of any subcontractor contracts</u>.

> <u>[President's] claim that he only used subcontractors during the audit period but had direct labor employees prior to the</u>

23

> audit and began again immediately following the audit period lacked credibility. His accountant never deviated from the practice of taking deducting [sic] all labor costs as direct expenses. [President] testified to being closely involved with [Carson] company projects, including choosing the workers. [President] could not name a single subcontractor nor provide even a letter from a subcontractor confirming having done work for [Carson].
>
> [President] testified to the close control he and his son, [Vice-President] had over the work sites, including choosing all equipment and determining which workers were needed. This did not demonstrate that the work had been handed to subcontractors operating independently to complete subcontracted work by, for example, determining the equipment to be used, the workers to be hired, and supervising and handling of worksite issues.

Bd. Op. at 5; R.R. at 16a.

Section 19-1504(1) of the City Code requires that each employer within the City deduct the Wage Tax, make a return, and pay the City the amount of tax so deducted at such intervals as the City establishes. Therefore, the Board did not need to apply Section 19-1507 relating to vicarious liability. As such, the cases cited by Carson involving vicarious liability, including GoInternet and Carrigan, are inapplicable here.

In sum, the Board determined Carson failed to establish, as a matter of fact, that it used subcontractors during the audit period. Based on our review of the record, the Board did not err or abuse its discretion in determining that the weight of the evidence shows that the unionized employees who performed the labor on Carson's projects in the City were actually Carson employees. Therefore, we conclude the Board did not err in determining that the City's audit assessment

24

properly imposed the challenged Wage Tax liabilities on Carson for the nine-year audit period at issue, and we affirm the trial court as to the underlying tax liability.

## B. Penalties and Interest

### 1. Argument

Carson further contends the Board erred in determining Carson should pay penalties and interest on its BIR Taxes and Wage Taxes. Carson also asserts that Section 19-1507 of the City Code permits a petitioning taxpayer to have the interest and penalties abated as a matter of grace. Here, Carson maintains the vast scope of the audit, combined with Auditor's highly suspect and questionable methods, demonstrate the tax bill and draconian penalties and interest, should be abated in the interest of justice.

In response, the City asserts that pursuant to Section 19-1509(2) of the City Code, when a tax is not paid on time, interest and penalties shall be imposed and collected along with the tax. Contrary to Carson's contention, the City argues that waivers on interest and penalties are not a matter of grace, but are dependent upon a finding that the petitioner acted in good faith. See Phila. Eagles Football Club, Inc. v. City of Phila., 758 A.2d 236 (Pa. Cmwlth. 2000), rev'd on other grounds, 823 A.2d 108, 116 n.8 (Pa. 2003) (Board may abate, in whole or in part, interest or penalties, or both, where in the opinion of the Board, the petitioner acted in good faith, without negligence, and no intent to defraud). Moreover, the determination to abate interest or penalties is within the sound discretion of the Board. Id. Absent an abuse of discretion, a reviewing court should not disturb an agency's ruling. Id.

25

## 2. Analysis

Significantly, the Board did not make a determination that Carson pursued its appeal in good faith. Rather, as the trial court observed, the Board did not directly address Carson's request for a waiver of interest and penalties. Regardless, the trial court determined the Board's findings and conclusions include an *implicit* determination that Carson did not act in good faith.

We agree in general with the trial court's analysis regarding the Board's findings and conclusions. Nevertheless, given the large award of penalties and interest in this case, which totaled more than $3,000,000, we believe Carson is entitled to a written decision by the Board as to whether or not it acted in good faith during the audit period. See Phila. Eagles (determination to abate interest or penalties falls within the sole discretion of the Board and a reviewing court may not disturb the Board's ruling absent an abuse of discretion).

Here, the Board did not explicitly find that Carson acted in bad faith during the audit period. Before the Board, President testified he believed Carson's tax strategy, involving the placement of its field workers on a subcontractor's payroll, and then paying the subcontractor on a cost plus a fee basis "is not so uncommon in our industry." Bd. Hr'g, N.T. at 24-25; R.R. at 212a-213a (emphasis added). Moreover, there was testimony about the loss of documents due to a 2008 flood. Id. at 64-65, R.R. at 252a-253a. As such, there may be evidence of record supporting a Board finding that Carson believed it acted in good faith as to its use of an accepted tax strategy, and without negligence as to the failure to produce certain

26

documents. Consequently, we remand to the Board for an express determination, based upon the existing record, as to whether Carson acted in good faith, without negligence, and with no intent to defraud during the audit period.

### C. *De Novo* Hearing

### 1. Argument

Last, although Carson did not raise this issue in its Statement of Questions Involved, it argues in its brief that this case should be remanded to the trial court for a *de novo* hearing, or remanded to the Board for the making of a full and complete record. If a trial court determines the record before the local agency is incomplete, the court has discretion to determine the manner of implementing (completing) a deficient record before the agency. Sparacino v. Zoning Bd. of Adjustment, 728 A.2d 445 (Pa. Cmwlth. 1999). The court may either hear the appeal *de novo* itself or remand the matter to the agency for supplementation of the deficient record. Id. However, the trial court may not remand for a *de novo* agency hearing. Id.

Carson argues that at the November 2015 Board hearing, the City raised, for the first time, the issue of whether CIP Frames actually existed. Carson further asserts the Board apparently relied on this position when it adopted Auditor's conclusions. Carson therefore requests that we remand to the trial court or to the Board to allow the submission of evidence in the nature of public records showing CIP Frames does, in fact, exist as a corporation, and that it was created in 2004. As discussed above, the audit covered years starting in 2000.

In response, the City asserts, a full and complete record already exists. The Board certified a voluminous record, including exhibits and a transcript of all the proceedings. Further, the City argues that Carson's failure to timely submit evidence does not render the record incomplete. See Monaghan, 618 A.2d at 1243 (holding that the record was complete even though the petitioner did not present two allegedly important pieces of evidence below). In other words, the trial court is without authority under 2 Pa. C.S. §754 to remand a case to the agency to provide the appellant another opportunity to prove what he could have proved in the first place. Id. A record is not considered incomplete based on the appellant's failure to present evidence available at the time of the hearing. Id.

### 2. Analysis

Here, Carson's failure to submit the documentation of CIP Frames at an earlier proceeding does not render the record incomplete. Sparacino; Monaghan. Carson had the opportunity to timely present whatever evidence it wanted. Carson does not argue this evidence was not available prior to the Board hearing. In light of the particular circumstances in this case, we believe the Board afforded Carson a full and fair opportunity to present documentary evidence regarding the existence of CIP Frames at the Board hearing or within the 60-day period following the hearing that the Board allotted for the parties to submit additional evidence. Therefore, we reject Carson's contention that the Board's record was incomplete. Id.

### III. Conclusion

28

For the above reasons, we vacate the Board's assessment of interest and penalties against Carson for the BIR Taxes and Wage Taxes at issue and remand to the trial court with instructions to remand to the Board for an explicit determination under Section 19-1507 of the City Code, as to whether to abate some or all of the interests and penalties imposed upon Carson's failure to timely pay its BIR Taxes and Wage Taxes incurred during the audit period. To that end, the Board must determine, based solely upon the existing record, whether or not Carson acted in good faith, without negligence or without an intent to defraud during the audit period in question. In all other respects, we affirm the trial court's order.

ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Carson Concrete Corp.,                    :
                    Appellant             :
                                          :
          v.                              :   No. 179 C.D. 2017
                                          :
Tax Review Board                          :
City of Philadelphia                      :

Carson Concrete Corp.,                    :
                    Appellant             :
                                          :
          v.                              :   No. 180 C.D. 2017
                                          :
Tax Review Board                          :
and City of Philadelphia                  :

# **O R D E R**

**AND NOW**, this 21ˢᵗ day of December, 2017, the order of the Court of Common Pleas of Philadelphia County, to the extent it affirmed the Tax Review Board's assessment of interest and penalties for the Business Income and Receipts Taxes and Wage Taxes at issue in the above-captioned action, is **VACATED and this matter is REMANDED** with instructions for a remand to the Tax Review Board for further proceedings consistent with the foregoing opinion.  In all other respects, the Court's order is **AFFIRMED**.  Jurisdiction is relinquished.

_____
ROBERT SIMPSON, Judge